ACME CIRCUS OPERATING CO., INC.,
a Florida corporation,
Plaintiff-Appellee,

v.

Jane Beatty KUPERSTOCK,
Defendant-Appellant.

No. 82–5585.

United States Court of Appeals,
Eleventh Circuit.

Aug. 15, 1983.

Robert M. Todd, Mattson, McGrady & Todd, St. Petersburg, Fla., for defendant-appellant.

Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Stanley H. Eleff, Keith E. Rousaville, Tampa, Fla., for plaintiff-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This diversity action, involving survivability of the right of publicity of a person's name, presents a choice of law problem and a need to interpret state law. We conclude that the court below erred in granting summary judgment and reverse and remand.

This litigation resulted from a dispute between appellees, Acme Circus and Gerald Collins, Acme's owner, and appellant Jane Beatty Kuperstock, widow of Clyde Beatty, over the right of publicity in the name of Clyde Beatty and the title Clyde Beatty Circus. Beatty was an animal trainer, who prior to 1956 operated the Clyde Beatty Circus. In 1956, due to financial difficulties, he sold his circus equipment and property to appellee Collins and the predecessor to appellee Acme Circus, and entered into an employment contract with that circus. As part of the agreement and for its term, Beatty licensed to the buyers the right to use the name of Clyde Beatty and Clyde Beatty Circus. In 1958 Beatty and appellee, now Acme Circus, entered into another contract reaffirming the license of the name and allowing Acme the right to use another name in conjunction with Beatty's. The 1958 agreement was for a term of ten years and provided for payments to Beatty should he become disabled and to his wife should he die during the term. In June, 1965 Beatty assigned all of his right, title and interest in the Clyde Beatty Circus title and equipment to his wife, Jane Beatty, now Kuperstock. Beatty died on July 19, 1965.

The 1958 agreement expired by its own terms in 1968. Until that time Acme made payments to appellant. In 1969 appellant and Acme entered into another ten year contract. Therein appellant was recognized as the exclusive owner of the names Clyde Beatty and Clyde Beatty Circus. The contract provided for weekly payments to appellant in exchange for the license for Acme to use these titles. Both the 1958 and 1969 agreements contained options for Acme to purchase the title and name. Neither was ever exercised.

Unknown to appellant, in 1977, during the term of the 1969 agreement, Acme obtained a federal registration for the service mark "Clyde Beatty-Cole Bros. Circus," representing itself as the owner of the Clyde Beatty Circus.

Acme continued payments under the 1969 agreement until its expiration at the end of the 1978 circus season. An alleged oral agreement was then entered into between

the parties whereby Acme was to pay Kuperstock $30,000 for the 1979 season, payable at $1,000 per week. This amount was paid for 23 weeks. Acme ceased making payments in September, 1979. When negotiations failed, this action resulted.

Acme Circus initially brought an action for declaratory judgment of its right to use the name of Clyde Beatty in conjunction with its circus. Kuperstock counterclaimed against Acme and Collins on various grounds. Counts I and II of the counterclaim allege a violation of Fla.Stat. 540.08 (1967), which provides for recovery of damages for infringement of the right to publicity. The statute specifically provides for the survival of the right to publicity of a person's name.

. The action originally was brought by Acme in the state courts of California. It then was removed to federal court in the Central District of California. Thereafter, the matter was transferred to the Middle District of Florida as a more convenient forum, pursuant to 28 U.S.C. § 1404(a). The district court granted summary judgment on Counts I and II against Kuperstock and in favor of appellees Acme and Collins. Summary judgment was premised on the conclusion that California law controlled the issue of survivability of the right of publicity in this diversity case, that under California law the right of publicity in Clyde Beatty's name did not survive his death, and, therefore, Kuperstock possessed no right that could have been infringed in violation of Fla.Stat. § 540.08. The district court certified an interlocutory appeal to this court pursuant to 28 U.S.C. § 1292(b).

The thrust of the contentions by appellees Acme and Collins is that there were no enforceable contracts between Kuperstock and Acme, as any right to publicity in the name of Clyde Beatty expired at his death, and therefore Kuperstock gave no consideration for the contracts and owns no enforceable rights in the name of Clyde Beatty or Clyde Beatty Circus.

The district court determined that California law governs the decision whether the right of publicity of the name of Clyde Beatty, assigned to his wife during his life, survived his death. For the reasons stated *infra,* we agree. The court below concluded, however, that under California law the right to the name did not survive Beatty's death and therefore Kuperstock could not maintain an action for tortious infringement of a right she did not possess. With this conclusion we disagree and, accordingly, reverse and remand for additional proceedings.

*Choice of Law*

■ The district court correctly noted that because this diversity action was transferred from the Central District of California to the Middle District of Florida, it was to apply the choice of laws principles on which the Central District of California would have relied. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The Central District of California in a diversity action must apply the conflicts of law principles of the state in which it sits, i.e. California. *Klaxon Co. v. Stentor Electrical Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Roofing & Sheet Metal Service v. LaQuinta Motor Inns,* 689 F.2d 982, 991 (11th Cir.1982). Thus California choice of law rules properly are applicable here.

This, of course, does not lead inexorably to the conclusion that California *substantive* law applies to each issue in this action. On the contrary, application of one state's choice of laws principles may often dictate application of the substantive law of another state.

■ The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state of California applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

Here the issue before us is whether or not an intangible personal property right, the right of publicity, survives the death of the individual in whom the right arose. Whether or not a right of such a nature *exists,* is a question of personal property law.[1]

■ In step two we must ascertain what choice of law principle California courts apply to issues of personal property law. Appellees consistently have argued that California applies the law of the domicile as its choice of law principle in property cases. Indeed, Cal.Civil Code § 946 states: "If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."[2] In *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 148 Cal.Rptr. 867, 869, 583 P.2d 721, 723 (1978), the court stated: "Questions of choice of law are determined in California . . . by the 'governmental interest analysis' rather than by the . . . 'most significant contacts theory.'" This statement of law could be interpreted to mean that the "governmental interests analysis" applies to *all* California choice of law problems, regardless of the type of issue at hand. In both *Offshore* and in *Reich v. Purcell,* 67 Cal.2d 551, 553, 63 Cal.

Rptr. 31, 33, 432 P.2d 727, 729 (1967), on which *Offshore* relies, however, the court was faced with a negligence issue, a tort question. Given the explicit language of Cal.Civil Code § 946, we can reasonably conclude that although in California the "governmental interests analysis" applies to choice of law issues arising from a question of whether an existing right has been tortiously infringed, the law of the domicile controls to decide whether the allegedly infringed property right *exists* in the first instance.[3]

■ California indisputably was the domicile of Clyde Beatty at the time of his death. Accordingly, the law of California governs the issue of whether his right of publicity survived his death.

*Interpretation of State Law*

The final step in our analysis is to determine whether the right survived under California law. This is no small task. Given the development of California law in this area, however, we conclude that under that law, as applied to the facts of this case, the district court erred in concluding the right of publicity did not survive Clyde Beatty's death.[4]

In *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425 (1979),

1. This is to be distinguished from the issue of whether an existing right has been *infringed,* which may be an issue of tort or contract law. In *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425 (1979), the California Supreme Court stated that an inquiry into whether the right of publicity is a property right or a tort is "pointless." *Id.* 160 Cal.Rptr. at 326, 603 P.2d at 428. The *Lugosi* court, however, was not faced with a choice of law problem to which the distinction clearly is relevant.

2. It may be in fact that no real conflict of California and Florida law exists as to which law to apply on the survival question. *See* text *infra,* at 1545. In *Beverly Beach Properties v. Nelson,* 68 So.2d 604, 614 (Fla.1953), *cert. denied,* 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643 (1954), the Florida court indicated that under Florida law "intangible personal property in contemplation of law, accompanies the person of the owner." Given, however, that there the issue was one of jurisdiction, not choice of

law, we analyze the problem, assuming a true conflict.

3. The district court cited *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278 (2d Cir.1978), to support its conclusion that the law of the domicile controlled the issue of the existence of the property right. This is in error. In *Factors* the Second Circuit sitting in diversity was applying *New York* choice of law rules. There, *New York* applied the law of the domicile to property law issues and thus the question of survivability of the right of publicity. It so happens that California, too, applies this choice of law rule to property issues, but the *Factors* case, applying New York law, has no real bearing on the issue before us.

4. *See* text *infra,* at 1545 & n. 8 (on remand district court must determine whether a secondary meaning had been impressed on the name of Clyde Beatty in conjunction with the Clyde Beatty Circus and whether valid assignment was made).

the California Supreme Court held that the right of publicity does not survive the death of the party in whom the right arose where that right had not been exploited prior to his death sufficiently to impress on the decedent's name a secondary meaning.[5] *Id.,* 160 Cal.Rptr. at 325 & n. 5, 326, 327, 328, 603 P.2d at 428 & n. 5, 429, 430, 431. A reading of the majority opinion initially leaves unclear whether the court intended to hold that the right of publicity never is survivable and descendible or that the right *may* survive if exercised by the decedent prior to his death to an extent impressing on his name a secondary meaning. *See id.* 160 Cal.Rptr. at 325 & n. 5, 603 P.2d at 428 & n. 5 (discussing *Johnston v. Twentieth Century Fox Film Corp.,* 82 Cal.App.2d 796, 187 P.2d 474); 160 Cal.Rptr. at 326, 603 P.2d at 429 (even if Lugosi had created a secondary meaning in his name "whether Lugosi's heirs would have succeeded to such property depends entirely on how it was managed before Lugosi died"); 160 Cal. Rptr. at 327, 603 P.2d at 430 (Lugosi did not transfer and capitalize on the right during his lifetime); 160 Cal.Rptr. at 328, 603 P.2d at 431 (right was "never exercised during the lifetime of [its] creator[ ]"). However, Chief Justice Bird, in dissent, stated: "The majority would appear to have concluded that an individual's right of publicity may be exploited after his death if exercised or assigned by the individual during his lifetime." *Id.* 160 Cal.Rptr. at 345 n. 33, 603 P.2d at 447 n. 33. *See also id.* 160 Cal.Rptr. at 345, 603 P.2d at 447 (text).

Two days after the Lugosi decision the California court reaffirmed its holding, applying it in *Guglielmi v. Spelling-Goldberg Productions,* 25 Cal.3d 860, 160 Cal.Rptr. 352, 603 P.2d 454 (1979). There, unlike in *Lugosi,* no limiting language specifically

was used to indicate that the holding·was limited to rights unexercised during the life of the one whose name is in issue. The majority in *Guglielmi* simply stated:

> In *Lugosi v. Universal Pictures,* [25 Cal.3d 813] 160 Cal.Rptr. 323, 603 P.2d 425, we hold that the right of publicity protects against the unauthorized use of one's name, likeness, or personality, but that the right is not descendible and expires upon the death of the person so protected. *Lugosi* controls the disposition of the present case and makes it unnecessary to discuss any further issues raised by the parties.

*Id.* 160 Cal.Rptr. at 353, 603 P.2d at 455. However, all indications are that there too the right had been unexercised during the life in issue, that of Rudolph Valentino. *See id.,* 160 Cal.Rptr. at 353–54, 603 P.2d at 455–56 (Bird, C.J., concurring).

Thus *Guglielmi* does little to help us resolve whether the *Lugosi* holding is conditioned on non-exercise of the right during a lifetime. Resolution of this issue is vital in the instant case because all indications are that Clyde Beatty, unlike Bela Lugosi, did exercise his right of publicity during his lifetime to an extent sufficient to impose on his name a secondary meaning associated with his circus and·did validly transfer that right to another. Accordingly, if under California law the right of publicity does survive if a secondary meaning has been created during the lifetime and that interest is sold or transferred validly to another, the summary judgment must be reversed.

In *Groucho Marx Productions v. Day and Night Co., Inc.,* 689 F.2d 317 (2d Cir.1982), the Second Circuit was faced with a question similar to that before us. There the issue was whether or not the heirs of Harpo

---

We regret that California does not afford us a procedure whereby such close questions of state law may be certified to the State Supreme Court for resolution. It also is regrettable that the turns and twists of diversity jurisdiction have lead to a federal court of appeals in Florida, Georgia, and Alabama deciding this issue.

5. The court in *Lugosi* held that acting a role does not by itself suffice to create such a secondary meaning. *Lugosi,* 160 Cal.Rptr. at 325, 603 P.2d at 428; *id.* 160 Cal.Rptr. at 329, 603 P.2d at 432 (Mosk, J., concurring). *See also Johnston v. Twentieth Century Fox Film Corp.,* 82 Cal.App.2d 796, 810, 187 P.2d 474 (1974).

and Chico and the lifetime assignee of Groucho, inherited and retained, respectively, the Marx Brothers' right of publicity, and whether or not use of the likeness of the Marx Brothers by defendant Day and Night Co., Inc., infringed that right of publicity. The court was required to decide whether the right of publicity survived the death of the Marx Brothers, so as to continue as a property right of their heirs and Groucho's assignee. All three Marx brothers were domiciled in California at the time of their deaths. New York, as we have discerned California does also, applies as its choice of law rule to property issues the law of the domicile. The Second Circuit in *Groucho Marx Productions* therefore applied California law to decide if the right of publicity survived the deaths of the Marx Brothers, giving their heirs and assignee a valid claim for infringement of that right.

In analyzing the survivability of the right of publicity in California, the Second Circuit stated:

> Without question, *Lugosi* established that California law does not recognize a descendible right of publicity available to the heirs of a celebrity who did not exploit his own right during his lifetime. What is less certain, however, is whether the right is descendible when the celebrity does exploit it during his lifetime. To take the California Court's example, what rights would Lugosi's heirs have had if he had established a company to market "Lugosi as Dracula" T-shirts?

*Id.* at 329.

In addressing this question, it said: "At most, California would recognize a descendible right of publicity that would have enabled the heirs to prevent others from using Lugosi's name and likeness on T-shirts or any other product he had promoted during his life." *Id.* at 321–22 (footnote omitted). The court continued:

We conclude that *Lugosi* is subject to two interpretations. It may mean that California does not recognize any descendible right of publicity and that the heirs of a celebrity must rely on trademark law to protect the goodwill that the celebrity brought to a product during his lifetime. Alternatively, *Lugosi* might mean that, wholly apart from trademark law, California recognizes a descendible right of publicity that enables the heirs to prevent the use of a celebrity's name and likeness on any product or service the celebrity promoted by exploiting his right of publicity during his lifetime.

*Id.* at 323.[6] We agree with the Second Circuit that these are the two possible interpretations of *Lugosi*.

In *Groucho Marx Productions* the court did not need to choose between these two possible interpretations because under neither interpretation did the plaintiffs there prevail. "Even if there is a limited descendible right, applicable to a product or service promoted by the celebrity, the defendants are not using the names or likenesses of the Marx Brothers in connection with any product or service that the comedians promoted during their lives." *Id.* (footnote omitted). The same is not true in the instant case. During his lifetime Clyde Beatty used his name in connection with a service. Plaintiffs/appellees clearly are using his name in connection with the very same product or service, a circus.

We reject the possibility that the publicity interest never survives because such a strict interpretation would mean that much of the *Lugosi* majority opinion is pure dicta and surplusage. Throughout the opinion the court puts Lugosi's factual situation in juxtaposition to one where the right of publicity had been exploited during the lifetime in relation to a specific product or service. An interpretation of *Lugosi* that

**6.** A third possible interpretation, that, if exercised during one's lifetime, the right of publicity survives and allows descendants and assignees to prevent others from profiting in any way from the use of the likeness or name was re-

jected by the Second Circuit as untenable under any reading of *Lugosi* and *Guglielmi. Groucho Marx Productions,* 689 F.2d at 329. We agree.

the right of publicity never survives undermines the logical framework of the majority opinion.

As stated *supra,* the *Lugosi* court emphasized that "[t]here is no allegation in the complaint, no evidence in the record, and no finding of the court that Lugosi in his lifetime alone, or with others used his name and/or likeness as Dracula or otherwise in connection with any business, product or service so as to impress a secondary meaning on such business, product, or service." 160 Cal.Rptr. at 325, 603 P.2d at 428.

The court reasoned that in his lifetime Lugosi could have developed in his name and/or likeness a business or property interest by selling, for instance, shirts with "Lugosi as Dracula" printed on them. "[W]hether Lugosi's heirs would have succeeded to such property [i.e. whether such a property right would have survived his death] depends entirely on how it was managed before Lugosi died. Lugosi may have sold the property . . . . *for installment payments and/or royalties due after his death, in which latter event such payments and/or royalties would, of course, be a part of his estate.*" *Id.* 160 Cal.Rptr. at 326, 603 P.2d at 429 (emphasis added).

At issue in *Lugosi* were only the rights Lugosi had *not assigned* to Universal, those rights left unexploited.[7] The *Lugosi* court was faced with a question whether the *unrealized* potential to develop such a property right survives death. They concluded not, precisely because:

> It is not at all unlikely that Lugosi and others in his position did not during their respective lifetimes exercise this undoubted right to capitalize upon their personalities, and transfer the value thereof into some commercial venture, for reasons of taste or judgment or because the enterprise to be organized might be too demanding or simply because they do not want to be bothered.

> It seems to us rather novel to urge that because one's immediate ancestor did not

exploit the flood of publicity. and/or other evidence of public acceptance he received in his lifetime for commercial purposes, *the opportunity* to have done so is property which descends to his heirs.

*Id.* 160 Cal.Rptr. at 336, 603 P.2d at 439 (emphasis in original).

This reasoning leads us to conclude that where the right *was exercised* during the lifetime and turned into a commercial venture or other contract right, it becomes property that, under California law, survives and certainly may be assigned, giving the assignee the benefit of that assignment after the death of the assignor. *See id.* 160 Cal.Rptr. at 326, 603 P.2d at 429. *Lugosi* casts no doubt on the fact that the publicity rights Lugosi explicitly assigned during his lifetime to Universal Pictures continued as the property of Universal after his death. *See id.* 160 Cal.Rptr. at 326 n. 7, 328, 603 P.2d at 429 n. 7, 431.

We thus interpret *Lugosi* to say that where a right to publicity of a name has been exercised in conjunction with a specific product or business during a lifetime sufficiently to create a secondary meaning in that name and the right to use that name in conjunction with the same product or business has been validly assigned to another, the rights flowing therefrom survive the death of the assignor. *See id.* 160 Cal.Rptr. at 330, 603 P.2d at 433 (Mosk, J., concurring) ("Unquestionably an inheritable property right can be either created or eliminated by contract"). *See generally* Felcher & Rubin, *Privacy, Publicity, and the Portrayal of Real People by the Media,* 88 Yale L.J. 1577, 1618–20 & n. 182 (interpreting the California Court of Appeals opinion in *Lugosi,* which the California Supreme Court adopted virtually verbatim, as holding that "a cause of action originating with the individual portrayed survives him only if he has contracted for the commercial use of his attributes during his life"). *See also* Felch-

---

7. "Assignment of the right to exploit name and likeness by the 'owner' thereof is synonymous with its exercise." *Lugosi,* 160 Cal.Rptr. at 328, 603 P.2d at 431.

er & Rubin, *The Descendibility of the Right of Publicity: Is There Commercial Life After Death?*, 89 Yale L.J. 1125, 1126 (1980) (interpreting California Supreme Court in *Lugosi* as implying if right exploited during lifetime is survivable and descendible).

In the instant litigation the relationship between Clyde Beatty and appellant Kuperstock is more directly analogous to that of Lugosi and Universal Pictures, not Lugosi and his heirs. More to the point, however, Beatty exploited his right of publicity in his name in connection with a specific product or business during his lifetime. Bela Lugosi did not.

Accordingly we reverse the district court's grant of summary judgment and remand for further proceedings.

Because some confusion was evidenced by all in the proceedings below as to the proper approach to the question of survival and to the choice of law problems, we add a few additional comments.

In the instant case there is no dispute but that Clyde Beatty exercised his right of publicity in his name during his lifetime. Prior to his death, he assigned the property rights so created to his wife, the appellant. Given our interpretation of California law, there is at least one question bearing on the issue of survivability that the district court must resolve.[8]

Clyde Beatty created the Clyde Beatty Circus, apparently impressing on that name a secondary meaning protected by the law of California, Cal.Civil Code § 654; *Lugosi v. Universal Pictures,* 160 Cal.Rptr. at 325 & n. 5, 603 P.2d at 428 & n. 5; *Johnston v. Twentieth Century Fox Film Corp.,* 187 P.2d at 483–85, and surviving Beatty's death for the reasons stated *supra.* Whether such a secondary meaning was created is a question of fact, however, and must be resolved by the trial court. *Johnston,* 187 P.2d at 484.

Assuming arguendo that a secondary meaning in the name of Clyde Beatty was created and that a valid assignment of that right was made, and thus that appellant Kuperstock retains a surviving interest in that name, the district court then must address the question of whether that right has been tortiously infringed. At that point another choice of law problem will be presented, unless there is no real conflict between the laws of California and Florida as to the right to recover for tortious infringement of a right of publicity. *See Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 148 Cal.Rptr. 867, 869–70, 583 P.2d 721, 723–24 (1978); *Hurtado v. Superior. Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 109, 522 P.2d 666, 669 (Cal.1974). While it may be that there is no true conflict between these two states on this issue, *compare* Cal.Civil Code § 3344 (1971) and Fla. Stat. § 540.08 (1967), the structure of the statutes is very different. Punitive damages are available under the Florida statute. We have not at this time ascertained whether punitive damages are available under the California statute. Other possible differences may exist.

Assuming for our purposes here that a true conflict does exist, the district court must ask: What law applies to determine whether the surviving right has been infringed? For the reasons stated *supra,* the district court must, of course, apply the choice of law rule that a California court would apply to a tort issue. California applies a "governmental interest" choice of law rule in such cases. *Offshore Rental Co. v. Continental Oil Co.,* 148 Cal.Rptr. at 867, 583 P.2d at 723; *Hurtado v. Superior Court,* 114 Cal.Rptr. at 109, 522 P.2d at 669; *Reich v. Purcell,* 63 Cal.Rptr. at 32, 432 P.2d at 728.

Apparently California allows recovery for infringement of the right of

---

8. There also exists, of course, the issue of the validity of the assignment. No challenge to it  has thus far been made.

publicity only under specific conditions. See Cal.Civil Code § 3344. Any governmental interest California would have in applying its law in this action and limiting a right of recovery to those conditions would arise only from its desire to protect the interests of its domiciliary. Here, however, the only California domiciliary is the appellant, the plaintiff in the counterclaim, not the defendant. Thus, California would have little or no interest in limiting recovery to specific conditions. *See Hurtado v. Superior Court,* 114 Cal.Rptr. at 110, 572 P.2d at 670. On the other hand, appellees are residents of Florida. The circus operates out of Florida and in the southeastern section of the country. Any unauthorized use of the name of Clyde Beatty most likely has occurred in Florida. The State of Florida would have a strong governmental interest in insuring that infringements of existing rights of publicity do not occur within its borders. There would be a governmental interest in prohibiting its citizens from engaging in such infringement. Hence, applying a "governmental interest analysis" and based on the sparse record before us now, it appears that Florida law will apply to the issue of whether there has been a tortious infringement of the right of publicity.[9]

The grant of summary judgment is REVERSED and the matter is REMANDED for further proceedings.

**9.** Application of California substantive law to the issue of survivability and the existence of Kuperstock's property right obviates appellees' argument that application of Fla.Stat. § 540.08 (1967) would violate due process. Appellees argue that because the right of publicity in Beatty's name passed into the public domain in 1965 and was used exclusively by Acme before 1967, when Fla.Stat. § 540.08 was enacted, application of § 540.08 would constitute an unconstitutional taking. Given that under California law the right of publicity survived, the right did not pass into the public domain at Beatty's death. Thus no taking occurred.