587 So.2d 483 (1991)
AETNA CASUALTY AND SURETY COMPANY, Appellant,
v.
HUNTINGTON NATIONAL BANK, an Ohio corporation, Appellee.
No. 90-1251.
District Court of Appeal of Florida, Fourth District.
August 28, 1991.
Rehearing, Rehearing and Certification Denied November 12, 1991.
*484 David R. Howland of Howland & Krieger, Coral Gables, for appellant.
Eben G. Crawford, and Jeff Lloyd of Squire, Sanders & Dempsey, Miami, for appellee.
Rehearing, Rehearing En Banc and Certification Denied November 12, 1991.
FARMER, Judge.
In litigation arising from a tragic automobile accident, the parties settled with the estate of the victim, but left unresolved their own cross claims as to who between them should bear the contested part of the settlement. Aetna, the victim's uninsured motorist [UM] insurer, argues that under Ohio law, which should decide the issue, Huntington National Bank, an Ohio bank which was the lessor of the at-fault vehicle under a long term lease, should pay the entire amount. Huntington in turn argues that Florida law, viz. section 324.021(9)(b), Florida Statutes, governs and the UM carrier should pay it. Concluding that Florida law applies, we affirm.
Susan Strum was killed in a motor vehicle collision when the car in which she was riding was struck by a car driven by Gail Stepien. Susan's car was insured by Aetna and had UM coverage of $500,000. Gail's car was owned by Huntington and leased under a four year lease to an Ohio *485 company controlled by Gail's father. The lease was not a financing arrangement; it merely leased the car for a term of four years. Title expressly remained in the lessor, who was specifically described in the lease as the sole owner, and the lessee had no option to purchase the vehicle at the end.
The lease required the lessee to maintain identical insurance and in the exact limits prescribed by section 324.021(9)(b). While the lease says that it was made in Ohio and is to be governed by Ohio law, the leased automobile was actually sold here in Florida. The lessee maintained $1,000,000 in liability coverage at the time of the collision. The lessor also had its own coverage in a like amount.
The decedent's personal representative brought a wrongful death suit, joining the driver of the leased vehicle, the lessee, the owner/lessor, and the UM carrier covering the deceased and her family. Before trial, the plaintiff offered to settle all claims for $1,500,000. The lessee's carrier paid its policy limits of $1,000,000. The UM carrier and the lessor's carrier each agreed to pay the estate $250,000 towards the settlement, subject to a reservation of jurisdiction to decide the cross claim between them as to which of them is liable for the entire $500,000 portion of the settlement.
At first the court held that the Ohio bank was liable for the entire sum. A motion for rehearing was filed, however, and upon reconsideration the court changed its mind and entered judgment in the Bank's favor. The trial judge explained:
The court specifically finds that any liability of [the lessor or lessee] stems from plaintiff's tort claim. Florida law applies. Huntington is entitled to any defenses available under Florida law. Florida Statute § 324.021(9)(b) is constitutional, and applies to this case.
The court thus entered judgment against Aetna for $250,000 together with interest at 12% per annum as agreed by the parties in their stipulation. It is that judgment which we review.
The first step in conflict of laws analysis is to ascertain the nature of the problem involved: e.g. torts, contracts, property, divorce, etc. Acme Circus Operating Co. Inc. v. Kuperstock, 711 F.2d 1538, 1540 (11th Cir.1983). As the UM carrier of the victim suing under subrogation, Aetna stands in the shoes of its insured. Adams v. Brannan, 500 So.2d 236 (Fla. 3rd DCA 1986), rev. den. 511 So.2d 297 (Fla. 1987). Its insured's claim against the lessor plainly sounds in tort, based on the dangerous instrumentality doctrine.
The lessor's relationship with the negligent driver, its lessee, was based on a contract, i.e. the lease. But that relationship does not govern the rights and liabilities between the victim and the tortfeasor, because the duty of those persons responsible for the operation of the vehicle to persons subject to being injured from its operation is non-delegable and cannot be affected by private agreements between the owner and operator. Susco Car Rental System of Florida v. Leonard, 112 So.2d 832, 835-836 (Fla. 1959). Hence we characterize the nature of the issue as one of tort law, rather than contract.
The next step in choice of law analysis is to determine the forum's choice of law rule. In Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), the court abandoned the rigid lex loci delictus test and adopted in its place the "significant relationships test" of sections 145-146, Restatement (Second) of Conflict of Laws. Under this test,
"the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."
Section 145(1), Restatement (Second) of Conflict of Laws.[1]
*486 The next step is to determine which state's interest is most significant. Judge v. American Motors Corporation, 908 F.2d 1565 (11th Cir.1990) (applying Florida choice of law rules). Significance in this context denotes the competing interests of the conflicting states in the determination of a particular issue. Section 6 of the Restatement directs us to the relevant policies of the forum and the competing state in this interest analysis. We determine those relevant policies from the rule of law that each state seeks to apply.
In this case, the UM carrier argues that Florida and the policies which underlie section 324.021(9)(b) should give way to Ohio which has no similar statute and thus no similar policy to apply. That deceptively simple argument fails, however, to state the full extent of the interests involved. Actually Florida has a general, common law rule making long term lessors of motor vehicles vicariously responsible for injuries caused during a lessee's negligent operation of the vehicle, Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990), but section 324.021(9)(b) relieves some of them of this vicarious liability if they comply with the statute. Florida's policy in this action is thus to impose liability on lessors in the circumstance of Huntington here, unless they have complied with the statute, as Huntington has apparently done.
Ohio's rule and policies are also not quite as Aetna characterizes them. Ohio has rejected the dangerous instrumentality doctrine for automobiles. Elliott v. Harding, 107 Ohio St. 501, 140 N.E. 338 (1923). There is no vicarious liability in Ohio merely for being the lessor of a motor vehicle. Ross v. Nutt, 177 Ohio St. 113, 203 N.E.2d 118 (1964). Yet Aetna argues that Ohio has not adopted a rule similar to Florida's section 324.021(9)(b), an omission which evidences an Ohio policy not to apply such a statute to the lessors of automobiles in Ohio. It is more accurate to say, however, that Ohio does not have a rule similar to our statute because it does not apply the rule to which the statute is an exception.
Aetna argues that the Ohio choice of law provision in this lease does not preclude application of the Florida dangerous instrumentality doctrine to this case. It fails to say, however, why we should apply only Kraemer but not the statute. It seems to us that the common law rule should come hide-bound with the statutory exception. Nothing in conflict of laws analysis requires that issues be so finely atomized, simply to shoehorn one part of an issue into the state whose law sustains one result and shoehorn the other into a different state whose law leads to another.
When the rules and policies of the competing states are thus examined, we find that there is no real conflict because in neither state is the lessor vicariously liable under the circumstances here involved. The conflict raised by the UM carrier is thus a false one. The trial court therefore properly applied section 324.021(9)(b).
Aetna's constitutional arguments as to the validity of section 324.021(9)(b) now appear to have been settled by the Florida supreme court's decision in Abdala v. World Omni Leasing Inc., 583 So.2d 330 (Fla. 1991). Although the court had analyzed that statute in Kraemer as being based on the use of such leases primarily as a long term financing arrangement, in this case it clearly served no such function. While we might have thus questioned the application of section 324.021(9)(b) where long term financing of the purchase of an automobile is not involved, the language of the opinion in Abdala appears to sweep more broadly. We therefore think it appropriate to certify to the supreme court as a question of great public importance whether section 324.021(9)(b) is applicable to long term leases which are not automobile financing substitutes.
*487 We thus affirm the trial court's decision in all respects.
AFFIRMED.
DOWNEY and GUNTHER, JJ., concur.
NOTES
[1] Section 6 of the Restatement (Second) of Conflict of Laws sets out other principles which govern conflict analysis. These include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations, and
(e) the basic policies underlying the particular field of law.