609 So.2d 1315 (1992)
AETNA CASUALTY & SURETY COMPANY, Petitioner,
v.
HUNTINGTON NATIONAL BANK, etc., Respondent.
No. 79065.
Supreme Court of Florida.
December 17, 1992.
*1316 Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for petitioner.
Suzanne H. Youmans of Squire, Sanders & Dempsey, Palm Beach, for respondent.
HARDING, Justice.
We have for review Aetna Casualty & Surety Co. v. Huntington National Bank, 587 So.2d 483 (Fla. 4th DCA 1991), in which the Fourth District Court of Appeal certified the following to be a question of great public importance:
[W]hether section 324.021(9)(b) is applicable to long term leases which are not automobile financing substitutes.
Id. at 486. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and answer the question in the affirmative.
In 1988, Bison Leasing Co. leased an automobile to T.J. Stepien Enterprises for a term of four years. Bison simultaneously assigned all interest in the lease to Huntington National Bank, an Ohio bank. Under the terms of the lease, title expressly remained with Huntington which was also described as the sole owner; Stepien had no option to purchase the vehicle; Stepien was required to obtain insurance consistent with the requirements of section 324.021(9)(b), Florida Statutes (1987);[1] and the lease was to be "construed, interpreted and determined by the laws of the State of Ohio."
Gail Stepien, daughter of a principal of the lessee T.J. Stepien Enterprises, was the permissive user of the vehicle when it was involved in an accident in Broward County, Florida, in which another individual was killed. The decedent's personal representative brought a wrongful death action, joining Stepien's daughter as the driver of the leased vehicle, T.J. Stepien Enterprises as the lessee, Huntington as the owner/lessor, and Aetna as the uninsured motorist carrier for the deceased. The parties settled with the estate of the victim for $1.5 million, *1317 dividing their contributions as follows: (1) the insurer of the Stepiens paid its policy limits of $1 million; and (2) Huntington and Aetna each agreed to contribute an additional $250,000, while reserving their rights to litigate cross-claims as to ultimate liability for the $500,000 balance.
Huntington and Aetna sought declaratory relief in the form of their cross-claims, and both parties moved for summary judgment. At first the trial court held that Huntington was liable for the entire sum. However, upon rehearing, the trial court entered final summary judgment in Huntington's favor, finding Huntington exempt from liability under section 324.021(9)(b). The trial court stated that any liability of Huntington stemmed from the tort claim, and thus Florida law applied. The trial court entered judgment against Aetna for $250,000 plus interest at 12% per annum.
On appeal, the Fourth District Court of Appeal found that the trial court properly applied section 324.021(9)(b), affirmed the summary judgment in all respects, and certified the question to this Court.
Aetna argues that section 324.021(9)(b) is only applicable to long term leases which are automobile financing substitutes. Because the lease at issue in this case does not constitute an alternative method for financing the car (lease contains no option to purchase, vests no ownership rights in the lessee, and returns the vehicle to the owner/lessor after four years), Aetna contends that section 324.021(9)(b) is inapplicable and that Huntington as owner/lessor is liable for the lessee's negligence under the dangerous instrumentality doctrine. In support of this position, Aetna points to the legislative debate preceding passage of the bill that was codified as section 324.021(9)(b). During that debate, the sponsor of the proposed bill described long term leases as "an alternative way of financing an automobile."
Huntington argues that the plain language of section 324.021(9)(b) provides that a lessor under any motor vehicle lease for one year or longer is not liable under the dangerous instrumentality doctrine provided that the lessee maintains the requisite minimum insurance coverage specified by the statute. We agree.
When the language of a statute is clear and unambiguous and conveys a clear meaning, the statute must be given its plain and ordinary meaning. Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987); Holly v. Auld, 450 So.2d 217 (Fla. 1984). In this case, the statute clearly states that "the lessor, under an agreement to lease a motor vehicle for 1 year or longer ... shall not be deemed the owner" of the vehicle for purposes of determining financial responsibility for the operation of the vehicle or for the acts of the operator of the vehicle. § 324.021(9)(b), Fla. Stat. (1987). The statute places two restrictions upon the type of motor vehicle lease that would exempt the owner/lessor from liability: 1) the lease must be "for 1 year or longer"; and 2) the lease must require the lessee "to obtain insurance acceptable to the lessor which contains limits not less than $100,00/$300,000 bodily injury liability and $50,000 property damage liability." Id. The statute contains no language that would restrict its application to leases which are financing substitutes, as Aetna urges. Moreover, section 324.021(9)(b) specifically states that its terms are applicable "[n]otwithstanding any other provision of the Florida Statutes or existing case law."
Aetna argues that the legislative debate evidences a legislative intent that section 324.021(9)(b) only applies to long-term leases which are financing substitutes. On the contrary, legislative intent must be determined primarily from the language of the statute. It must be assumed that the legislature knows the meaning of the words and has expressed its intent by the use of the words found in the statute. S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978). The legislative history of a statute is irrelevant where the wording of a statute is clear. Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679 (1936).
Aetna also argues that this Court's opinion in Abdala v. World Omni Leasing, Inc., 583 So.2d 330 (Fla. 1991), is controlling in this case, and requires that we consider *1318 the legislative history as evidence of legislative intent. In Abdala, this Court upheld the constitutionality of section 324.021(9)(b) against equal protection and due process claims. 583 So.2d at 333. In reaching that conclusion, the Court looked to the legislative history of section 324.021(9)(b) to determine that there was a rational basis for enacting the statute. Id. at 334. The Court's analysis in determining the statute's constitutionality is not controlling as it is not the same analysis that applies to a question of statutory interpretation. As explained above, the clear and unambiguous language of this statute conveys a clear and definite intent that it shall apply to all "agreements to lease a motor vehicle for 1 year or longer" so long as the lease requires the lessee to obtain insurance for the limits specified. § 324.021(9)(b), Fla. Stat. (1987).
Finally, Aetna contends that section 324.021(9)(b) is inapplicable to this foreign lease which provides that it be "construed, interpreted and determined by the laws of the State of Ohio." We reject this contention for two reasons. First, although the lease provides for construction under Ohio law, Aetna's claim against Huntington is based upon tort liability rather than upon the lease. As the district court correctly noted, "[a]s the [uninsured motorist] carrier of the victim suing under subrogation, Aetna stands in the shoes of its insured. Its insured's claim against [Huntington] plainly sounds in tort, based on the dangerous instrumentality doctrine." 587 So.2d at 485 (citation omitted). Although Huntington's relationship with the negligent driver was based on the lease,
that relationship does not govern the rights and liabilities between the victim and the tortfeasor, because the duty of those persons responsible for the operation of the vehicle to persons subject to being injured from its operation is nondelegable and cannot be affected by private agreements between the owner and operator.
Id.; accord Susco Car Rental Sys. v. Leonard, 112 So.2d 832 (Fla. 1959). Second, the plain language of the statute does not distinguish between foreign and domestic leases. Thus, we find that section 324.021(9)(b) applies equally to domestic and foreign leases which meet the statutory requirements.
Accordingly, we answer the certified question in the affirmative, and approve the decision below.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Section 324.021(9)(b), Florida Statutes (1987), provides:

(b) Owner/lessor.  Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith; further, this subsection shall be applicable so long as the insurance required under such lease agreement remains in effect, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith.