613 So.2d 52 (1992)
Richard V. BEATTEY, Sr., as Administrator of the Estate of Richard V. Beattey, Jr., Deceased, Richard V. Beattey, Sr., Individually, and Laurel Beattey, Individually, Appellants,
v.
COLLEGE CENTER OF FINGER LAKES INC., a New York corporation, Appellee.
No. 91-1752.
District Court of Appeal of Florida, Fourth District.
December 30, 1992.
Rehearing, Rehearing and Certification Denied March 3, 1993.
Dean E. Richard, Indianapolis, Indiana, and Maurice M. Garcia of Abrams, Anton, Robbins, Resnick & Schneider, P.A., Hollywood, for appellants.
W. Tucker Craig of Billing, Cochran, Heath, Lyles & Mauro, P.A., Fort Lauderdale, for appellee.
Rehearing, Rehearing En Banc and Certification Denied March 3, 1993.
HERSEY, Judge.
In this wrongful death action an appeal is taken from a summary final judgment. The cause of action arose out of a fatal automobile accident on San Salvador island in the Bahamas. Richard Beattey, Jr., was fatally injured when the vehicle he was driving collided head-on with a truck owned by appellee, College Centre of Finger Lakes, Inc., and driven by its employee, Samuel Zeakes. Two passengers in Beattey's vehicle died at the scene. Beattey was flown to Fort Lauderdale but died en route from his injuries. An autopsy and a brief investigation by the Broward Sheriff's office were conducted in Fort Lauderdale.
Appellants Richard Beattey, Sr., individually and as personal representative of his son's estate, and Laurel Beattey, mother of the decedent, filed this action in Broward County against College Centre. In the subsequent proceedings, appellee conceded *53 that it was vicariously liable for the negligence of its driver, Zeakes. The parties also stipulated that if the trial court found that Bahamian law applied, then "The Fatal Accidents Act of 1976" under Bahamian law would be applicable to this case. That law limits recovery in a wrongful death action to funeral expenses.
The trial court found that Bahamian law applied, and it entered the summary final judgment which is the subject of this appeal. In reaching this conclusion, the trial court purported to apply the significant relationships test to determine the choice of law as required by State Farm Mutual Auto Ins. Co. v. Olsen, 406 So.2d 1109 (Fla. 1981), and Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980). However, the court did not set forth the findings (by application of the criteria in the Restatement (Second) Conflict of Laws, sections 6, 145, 146 and 175, upon which it based its conclusion that Bahamian law should be applied. We reverse.
In Aetna Casualty and Surety Co. v. Huntington National Bank, 587 So.2d 483 (Fla. 4th DCA 1991), this court utilized the Bishop rule and concluded that Florida, rather than Ohio, law applied. In so doing, we set out the steps to follow in a conflict of law analysis. "The first step in conflict of laws analysis is to ascertain the nature of the problem involved: e.g. torts, contracts, property, divorce, etc." Id. at 485 (citing Acme Circus Operating Co. v. Kuperstock, 711 F.2d 1538, 1540 (11th Cir.1983)). The instant case clearly sounds in tort because the decedent's estate and the decedent's parents are suing for wrongful death due to appellee's negligence.
The second step in any conflict of laws analysis is to determine the forum's choice of law rule. Huntington Nat'l Bank, 587 So.2d at 485 (citing section 145(1), Restatement (Second) of Conflict of Laws). Florida's choice of law rule is the significant relationships test as provided by the Restatement and Bishop.
The final step in the analysis is to determine which state's interest is most significant, and "[s]ignifican[t] in this context denotes the competing interests of the conflicting states in the determination of a particular issue." Huntington Nat'l Bank, 587 So.2d at 486. Thus in the instant case, we must determine those relevant policies from the rule of law that each state would apply.
The criteria set forth in section 6 of the Restatement (Second) of Conflict of Laws and its Choice of Law Principles are as follows:
a. the needs of the interstate and international systems,
b. the relevant policies of the forum,
c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
d. the protection of justified expectations,
e. the basic policies underlying the particular field of law,
f. certainty, predictability and uniformity of result, and
g. ease in the determination and application of the law to be applied.
Restatement (Second) Conflict of Laws § 6 (1971). See also Restatement (Second) Conflict of Laws §§ 145(2), 146 (1971) (both sections 145(2) and 146 refer to section 6 in setting forth its criteria).
We first address the relationships Indiana, Florida, Bahama, and New York have to the subject occurrence, then apply the criteria from the Restatement rules.

INDIANA
Appellants Richard Sr. and Laurel Beattey were residents of Indiana at the time of their son's death; however, they since have moved to West Germany and do not intend to return to the United States as residents. The decedent also held a driver's license issued by the state of Indiana at the time of his death. (Additionally, the two other people who were killed in the decedent's vehicle were residents of Indiana; however, this need not be considered as they are not parties to this appeal.)

FLORIDA
The lawsuit was initiated in Florida and the decedent died of his injuries en route to *54 Ft. Lauderdale. The autopsy was performed in Florida, as well as a brief investigation into his death.

BAHAMAS
The collision occurred in the Bahamas. At the time of the accident, appellee had a field office in the Bahamas. Both vehicles involved in the accident were registered through the Bahamas, and decedent's vehicle insurer engaged a Bahamian agency to investigate the accident.

NEW YORK
Appellee is a corporation with its principal place of business in New York. Also, appellee's corporate charter was granted by the State of New York's Education Department. Appellee's insurance was issued through a New York agency, and the insurance contract has several provisions pertaining to New York law. Furthermore, at the time of his death, the decedent was living in New York while attending college. Therefore, the decedent and the defendant and the defendant's insurance company have New York as a common denominator.
Secondly, we apply the criteria in section 6 of the Restatement to weigh the above factors properly:
a. the needs of the interstate and international systems. All parties involved are/were American citizens with expectations of being protected by American laws. When all of the parties are of one citizenship, then that country has a significant interest in the litigation which outweighs the competing interest of another country. Cf. Harris [v. Berkowitz] 433 So.2d 613 at 615 [Fla.App. 1983] (when all parties are permanent residents of Florida, it is impossible to ascertain any policy Maine may have in limiting the parties' rights which would outweigh Florida's interest); see also Restatement (Second) § 178, comment b (in a situation where the decedents, beneficiaries and litigants are from a particular state, the law of that state determines the measure of wrongful death damages).
b. the relevant policies of the forum. The forum here is Florida because the litigation was initiated in Ft. Lauderdale. The current policies here are the significant relationships test under Bishop and the corresponding rules from the Restatement.
c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. This factor clearly indicates New York. New York has an interest in this case because a corporation formed in its state is being held liable, and more importantly, the insurance for the corporation was issued through a New York agency, and the premium rates were based on New York data. "In regard to insurance contracts, the choice of law rule generally accepted in Florida is that a contract of insurance is governed by the law of the state where the contract was finally consummated... ." Amica Mutual Ins. Co. v. Gifford, 434 So.2d 1015, 1017-18 (Fla. 5th DCA 1983). See also Olsen, 406 So.2d at 1111 (state where insurance is issued has an interest in the rights of its citizens who are subject to subrogation by the insurer).
d. the protection of justified expectations. Here, the parties had no justified expectations because this was an unexpected occurrence. This factor is important primarily in contract cases. Wal-Mart Stores, Inc. v. Budget Rent-A-Car Systems, 567 So.2d 918, 921 (Fla. 1st DCA 1990), rev. denied, 581 So.2d 163 (Fla. 1991).
e. the basic policies underlying the particular field of law. The particular field of law underlying the instant case is tort law, including wrongful death, comparative/contributory negligence, and the subrogation of insurance. Application of Bahamian law would seem repugnant to Florida public policy where there is no recovery allowed for wrongful death in Bahamian law, under which a party may recover only funeral expenses.
Additionally, it would seem that the Bahamas would have no particular interest in the outcome of litigation between two parties from New York, so that Bahamian policy would not be offended by the application of New York law. See Wal-Mart Stores, 567 So.2d at 921. Lastly, appellee/defendant is a New York corporation, and "with comparative fault rules, the jurisdiction most interested in the application *55 of their law are those in which the defendants are located." Id. (citing In re Air Crash Disaster at Washington D.C., 559 F. Supp. 333, 352 (D.D.C. 1983), aff'd, 866 F.2d 1521, 1524 (D.C. Cir.1989).
f. certainty, predictability and uniformity of result. The application of New York law here would serve to protect New York residents who may rely on and expect New York insurance coverage to apply even when traveling out-of-state. Wal-Mart Stores, 567 So.2d at 921.
g. ease in the determination and application of the law to be applied. While the place of injury would be easier to apply since it is the location of the accident and it simply provides no recovery, New York law would best serve the overall interests of the parties in these circumstances.
Based upon the criteria in section 6, it is clear that New York has the most significant relationships to the occurrence, and thus its law should govern here. Olsen; Bishop.
Our conclusion that New York law should be applied by the trial court requires reversal of the summary judgment and renders moot the second issue on appeal.
We reverse and remand for further appropriate proceedings.
REVERSED AND REMANDED.
POLEN and FARMER, JJ., concur.