**ALTADIS USA, INC., individually and for the use and benefit of Gulf Life Insurance Co., Plaintiffs,**

**v.**

**NPR, INC., doing business as Navieras de Puerto Rico; B–Right Intermodal Transport, Inc.; B–Right Trucking, Inc.; Key Bank, N.A.; National Union Insurance Company of Pittsburgh, Defendants.**

No. 3:02–CV–660–J–16MCR.

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 5, 2004.

G.J. Rod Sullivan, Jr., Sullivan & Company, Thomas Albert Boyd, Jr., Boyd &

---

Sutter, P.A., Jacksonville, FL, for Altadis USA, Inc., individually fubo Gulf Insurance Co., plaintiffs.

Lindsey C. Brock, III, Rumrell, Costabel, Warrington & Brock, LLP, Jacksonville, FL, for defendant NPR, Inc.

Stephen D. Busey and Allan E. Wulbern, Smith Hulsey and Busey, Jacksonville, FL, for defendant Key Bank, N.A.

## ORDER

MOORE, District Judge.

Before the Court is Key Bank, N.A.'s ("Key Bank") Motion to Dismiss and Supporting Memorandum of Law (Dkt. 65), to which the Plaintiffs filed a Response (Dkt. 72).

## I. The Plaintiff's Allegations Against Key Bank

The Plaintiffs filed their seventeen-count Amended Complaint (Dkt. 57) on August 18, 2003, stating claims against the various Defendants for breach of contract, third party beneficiary of contract, negligence, breach of fiduciary duty, conversion, civil theft, and intentional interference with business relations. The claims arise out of a scheduled July 3, 2001 shipment of 2,505 cartons of cigars from Puerto Rico, where they were delivered to common carrier Navieras, to Tampa, Florida, where they were to be received by Altadis, which was the holder of the bill of lading and owner of the shipment. According to the Plaintiffs, Navieras agreed to ship the cigars to Tampa, but it failed to deliver the cargo in like condition, as the entire shipment was instead lost by the Defendants. Altadis alleges that it also contracted with B–Right Intermodal Transport, Inc. and B–Right Trucking, Inc. (collectively referred to as "B–Right") on July 6, 2001 to transport the 40–foot container of cigars from the Navieras terminal at Blount Island,

Jacksonville, Florida, to the Altadis warehouse in Tampa, Florida. The cargo was allegedly stolen somewhere between Jacksonville and Tampa when it was negligently left by B–Right in an unattended parking lot over the weekend.

The Plaintiffs further allege that B–Right received settlement funds for the lost cargo from its insurance company, National Union Insurance Company of Pittsburgh ("National"). These funds were allegedly to be paid to Altadis, but B–Right failed to pay the settlement to Altadis as the owner of the lost shipment. The Plaintiffs allege that B–Right kept possession of the funds and refused to pay Altadis or hold the funds in trust for its benefit, instead depositing the funds in its regular checking accounts at Key Bank, a foreign corporation with its principal place of business in Cleveland, Ohio.

The Plaintiffs claims against Key Bank are contained in Counts XIV (conversion), XV (civil theft), and XVI (intentional interference with business relations), respectively. The Plaintiffs allege that Key Bank knew that the settlement funds were to be held in trust for the benefit of Altadis, but the bank nonetheless converted the funds by inducing, instructing or directing B–Right to commingle the funds with the funds deposited in its normal checking account, as a condition precedent to the extension of a line of credit to B–Right. As a result, the Plaintiffs claim the settlement funds have been improperly dissipated by B–Right for use to cover its operating expenses. They allege that Key Bank has refused to pay the settlement funds to Altadis, even though it knew that the funds paid by National were to be held separately in trust as settlement for the lost cargo. As such, the bank has allegedly converted the funds for its own use and benefit, and it has become an accomplice or conspirator with B–Right to steal the

funds when it knowingly used the funds to guarantee a line of credit. In addition, the Plaintiffs claim that Key Bank tortiously interfered with the agreement B–Right had with its insurer, National, to keep the settlement funds in trust for the benefit of Altadis.

Key Bank now moves to dismiss Counts XIV, XV, and XVI pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Key Bank argues that Count XIV should be dismissed because Ohio law does not recognize a claim for conversion of money, and the Amended Complaint does not allege that Key Bank ever took possession or control over the settlement funds in question. Count XV should allegedly be dismissed because Florida's civil theft statute cannot be a basis of a claim for an alleged theft that took place in Ohio, and because there are no allegations that Key Bank ever deprived Altadis of its funds, either temporarily or permanently. Lastly, Key Bank asserts that Count XVI fails to state a claim for tortious interference because there are no allegations in the Amended Complaint regarding a lack of privilege on the part of Key Bank, and because Altadis is a third party to the agreement allegedly interfered with by Key Bank, and therefore Altadis does not have standing to bring this claim. Each of these counts and grounds for dismissal will be discussed separately below.

## II. Standard of Review

To prevail on a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Defendant must show beyond all doubt that the Plaintiffs can prove no set of facts in support of their claims such that dismissal is proper. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir.1988). In other words, courts generally disfavor motions to dismiss and only grant such motions in rare circumstances. *See Gasper v. La. Stadium and Exposition Dist.,* 577 F.2d 897, 900 (5th Cir.1978). Moreover, the Court is required to accept all of the Plaintiffs' well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to the Plaintiffs. *See, e.g., Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1274, n. 1 (11th Cir.1999); *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998); *Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D.Fla.1995).

## III. Discussion

### A. *Choice of Law*

■ The parties initially dispute whether the substantive law of Florida or Ohio should be applied in determining whether to dismiss the three counts against Key Bank. Key Bank argues that under Florida's choice of law rules, Ohio law should govern the allegations against the bank because Ohio has the "most significant relationship" with the allegations against Key Bank. *See, e.g., Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980); Restatement (Second) of Conflict of Law § 145. Key Bank argues that Ohio is the "rational" choice of law for Counts XIV–XVI, as "the allegations against Key Bank and the corresponding alleged injuries took place in Ohio," in that the bank, B–Right, and the disputed money are all located in Ohio. Dkt. 65, pg. 5. As such, any alleged injury arising from conversion, theft or tortious interference would purportedly have occurred in Ohio, where B–Right's bank account was located. *See, e.g., United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 37 (1st Cir.1999); *S.S. Jacobs Co. v. Weyrick,* 164 So.2d 246, 250 (Fla. 1st DCA 1964).

The Plaintiffs claim that Key Bank's assertions that it and B–Right are Ohio

corporations should not be the basis for applying Ohio law, as these allegations are improperly outside the four corners of the Amended Complaint, which merely alleges claims against these "foreign" corporations. The Amended Complaint also makes no allegations regarding the location of B–Right's accounts, or where the alleged injuries to the Plaintiffs occurred. *See, e.g., Grossman v. Nationsbank, N.A.,* 225 F.3d 1228 (11th Cir.2000). Accordingly, the Plaintiffs assert that these allegations should not be used in the choice of law analysis, but in any event, Florida law is still the proper law to be applied under the "most significant relationship" test. *See also Steele v. Southern Truck Body Corp.,* 397 So.2d 1209 (Fla. 2nd DCA 1981); *Beattey v. College Ctr. of Finger Lakes, Inc.,* 613 So.2d 52, 53 (Fla. 4th DCA 1992); *In re Air Crash Disaster at Boston, Mass. on July 31, 1973,* 399 F.Supp. 1106 (D.Mass.1975). The Plaintiffs argue that if the Court looks at which state's interest in determination of the claims against Key Bank is the most significant, it becomes clear that Florida law should be applied in this case.

Based on the Amended Complaint, the Court simply does not find any connection between the allegations against Key Bank and the alleged events that took place in Florida. The allegations against Key Bank center around actions by this "foreign corporation" that did not take place in Florida. Regardless of whether this Court can now properly hold that those actions took place in Ohio and are thus subject to Ohio law, the fact remains that the Plaintiffs have provided the Court with no basis to conclude that Florida law should be applicable to the actions of Key Bank in Counts XIV–XVI. Although Florida has the most significant nexus to the claims against NPR, B–Right and National because their actions all relate directly to Altadis' injury from the stolen cargo in Florida, Key Bank is merely a foreign bank with no direct connection to Florida or the lost cargo in this case. Instead, the Court agrees with Key Bank that any alleged injuries to Altadis from conversion, civil theft or intentional interference caused by Key Bank took place outside of the state of Florida. Contrary to the Plaintiffs' assertions, the Court therefore finds that Florida is not the "common denominator" for purposes of their claims against Key Bank, as there are insufficient allegations in the Amended Complaint to connect either the bank or its actions to the state of Florida. Therefore, Florida law should not be applied to the allegations against Key Bank in the Amended Complaint. *See, e.g., Beattey,* 613 So.2d at 54; *Bishop,* 389 So.2d at 1001.

### B. The Plaintiffs' Claims Against Key Bank

Assuming that Ohio law is the applicable law to Counts XIV–XVI, the Court finds Key Bank's arguments that Ohio law does not support the Plaintiffs' claims against it to be well grounded. In Count XIV, Key Bank points out that the Plaintiffs have failed to sufficiently allege dominion or control over the insurance funds for purposes of a conversion claim, but in any event, conversion of money is not recognized under Ohio law. *See, e.g., Landskroner v. Landskroner,* 154 Ohio App.3d 471, 797 N.E.2d 1002, 1012 (2003); *Bench Billboard Co. v. Columbus,* 63 Ohio App.3d 421, 579 N.E.2d 240, 244 (1989). Moreover, since Florida law is not applicable to the claims against Key Bank on the face of the Amended Complaint, Florida's civil theft statute as alleged in Count XV would be an insufficient basis to state a claim for theft against the bank. Lastly, it is apparent that the Plaintiffs' claim for intentional interference in Count XVI is insufficient under Ohio law, as the Plaintiffs have not sufficiently alleged that Key Bank interfered with a business relation-

ship (of which Altadis was a beneficiary) without any privilege to do so. *See, e.g., Super Sulky, Inc. v. U.S. Trotting Assoc.,* 174 F.3d 733, 742 (6th Cir.1999); *Sony Electronics v. Grass Valley Group, Inc.,* 2002 WL 440749 (Ohio Ct.App.2002). Should the Plaintiffs wish to amend their Complaint further, they should properly allege claims against Key Bank under the law applicable to that foreign corporation.

Accordingly, upon due consideration, Key Bank's Motion to Dismiss (Dkt. 65) is **GRANTED.** Counts XIV, XV and XVI of the Plaintiffs' Amended Complaint (Dkt. 57) are hereby **DISMISSED without prejudice.** Should the Plaintiffs wish to further amend their Complaint to allege claims against Key Bank under the appropriate law, they shall do so **no later than twenty (20) days** from the date of this Order.