583 So.2d 330 (1991)
Jacinto ABDALA, et al., Petitioners,
v.
WORLD OMNI LEASING, INC., et al., Respondents.
Theodor TSIKNAKIS, et ux., Petitioners,
v.
VOLVO FINANCE NORTH AMERICA, INC., etc., et al., Respondents.
Nos. 75966, 75968.
Supreme Court of Florida.
June 27, 1991.
*331 Neil Carver, Coral Gables, Poses & Halpern, P.A., and Sharon L. Wolfe and Marc Cooper, Cooper, Wolfe & Bolotin, P.A., Miami, for petitioners.
Edward D. Schuster, Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Fort Lauderdale, Jeffrey B. Shapiro and Judy D. Shapiro, Herzfeld and Rubin, and Thomas E. Backmeyer, Hoppe, Backmeyer & Stokes, P.A., Miami, for respondents.
McDONALD, Justice.
We review Tsiknakis v. Volvo Finance North America, Inc., 566 So.2d 520 (Fla. 3d DCA 1990), wherein the district court certified that its decision involved a question of great public importance. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution, and approve the district court's decision.
This case involves the constitutionality of subsection 324.021(9)(b), Florida Statutes (1987), which concerns a long-term motor vehicle lessor's financial responsibility for the operation of that vehicle. Volvo Finance North America, Inc., and World Omni Leasing, Inc., are lessors of automobiles leased for periods in excess of one year. Two lessees were involved in separate automobile accidents in which Tsiknakis and Abdala were injured. Tsiknakis and Abdala sued the lessees and their respective lessors, Volvo Finance and World Omni. The trial courts granted summary judgment in favor of Volvo Finance and World Omni, finding that subsection 324.021(9)(b) operated to foreclose liability on their behalf. The cases were consolidated on appeal, the district court affirmed, and Tsiknakis and Abdala sought review in this Court.
We accepted jurisdiction in these cases before filing Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990). Kraemer held that, under Florida's dangerous instrumentality doctrine, long-term lessors of automobiles are liable for *332 damages caused by drivers of the leased automobiles. In addition, Kraemer recognized that the legislature acted to eliminate long-term lessors' liability under the dangerous instrumentality doctrine, upon the satisfaction of specified preconditions, by the passage of chapter 86-229, Laws of Florida. That law, as codified at subsection 324.021(9)(b), stated:
Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability; further, this subsection shall be applicable so long as the insurance required under such lease agreement remains in effect, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith.
Thus, the lessor of a motor vehicle for a period in excess of one year is not liable under the dangerous instrumentality doctrine for damages resulting from the operation of that vehicle provided that the lessee maintains the requisite minimum insurance coverage.
In the instant cases, no party disputes that the lessees each maintained the necessary insurance or that the leases were for periods in excess of one year. Tsiknakis and Abdala, however, both contend that subsection 324.021(9)(b) is unconstitutional for access to courts, equal protection, and due process violations.[1] We disagree.
We begin by addressing Tsiknakis and Abdala's claim that subsection 324.021(9)(b) violates the access to courts provision of our constitution.[2]Kluger v. White, 281 So.2d 1, 4 (Fla. 1973), interpreted this constitutional limitation on the legislature's power as follows:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Tsiknakis and Abdala argue that the legislature failed to provide a reasonable alternative or to show an overpowering public necessity for abrogating the right to sue a long-term lessor of a motor vehicle under the dangerous instrumentality doctrine. Volvo Finance and World Omni, on the other hand, respond by asserting that such was neither a statutory nor a common law right and, even if this Court found a right to exist, that the legislature has provided a reasonable alternative.
There is no statutory right to sue a long-term lessor of an automobile for damages an individual suffers as a result of the operation of that automobile. Such a right evolved through a series of decisions of this Court. In Kraemer we observed that the application of the dangerous instrumentality doctrine to automobiles originated in Southern Cotton Oil Co. v. Anderson, 80 *333 Fla. 441, 468, 86 So. 629, 638 (1920), wherein this Court stated:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway, is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Southern Cotton Oil recognized that it was applying an old and well-settled rule to new conditions and traced the dangerous instrumentality doctrine back to English common law. Overruling cases subsequent to Southern Cotton, we applied the doctrine to bailors in Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (1947). In Susco Car Rental System v. Leonard, 112 So.2d 832, 836 (Fla. 1959), we applied the dangerous instrumentality doctrine to the lessor of an automobile:
"The principles of the common law do not permit the owner of an instrumentality that is ... peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle ... properly operated when it is by his authority on the public highway."
(quoting from Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 441, 74 So. 975, 978 (1917)) (footnote omitted).[3]
Volvo Finance and World Omni correctly argue that Kraemer was the first decision of this Court specifically to hold long-term lessors of motor vehicles liable for injuries caused by the operation of those vehicles. Kraemer reasoned that, because a long-term lessor is an "owner" of the leased vehicle, the lessor is liable for any injuries arising out of the operation of that vehicle. In doing so, we declined to apply Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955), which held a conditional sales title holder with no beneficial interest in the vehicle not vicariously liable to a long-term lessor.
In arriving at our conclusion in Kraemer, we were somewhat affected by the statute under consideration and the perception the legislature held on the liability of long-term lessors and its effect on long-term financing. By implication we recognized its viability. Limiting the liability of one vicariously liable does not equate to denial of access to court. On this issue we approve the holdings of Perry v. G.M.A.C. Leasing Corp., 549 So.2d 680, 681 (Fla. 2d DCA 1989) (subsection 324.021(9)(b) "does not limit plaintiff's right to recover damages from the lessee who controls the operation of the vehicle. Nor does it place a cap upon those damages."), review denied, 558 So.2d 18 (Fla. 1990), and Folmar v. Young, 560 So.2d 798 (Fla. 4th DCA 1990) (same).[4] The legislature can determine the circumstances permitting vicarious liability without violating the holdings of Kluger, particularly when the law is unsettled at the time of the enactment.
We now turn to Tsiknakis and Abdala's claim that subsection 324.021(9)(b) is constitutionally infirm because it violates their equal protection and due process rights.[5] With regard to this claim, the pertinent test is whether the statute bears a reasonable relationship to a permissive legislative objective and is not discriminatory, arbitrary, or oppressive. See Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986); Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311 (Fla. 1984), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985). Tsiknakis and Abdala argue that the statute irrationally distinguishes between those plaintiffs injured by *334 vehicles leased for a period in excess of one year and those injured by vehicles leased for a period of less than one year. They further argue that the statute discriminates against those plaintiffs suffering the most catastrophic injuries by eliminating the lessor as a source of recovery. We disagree.
The legislature, by enacting subsection 324.021(9)(b), simply redefined "owner" of a motor vehicle so as to exclude a long-term lessor upon satisfaction of the statutory preconditions. The legislative history behind the statute indicates that the legislature recognized that leases for a period in excess of one year are actually an alternative method of financing the purchase of a motor vehicle to take advantage of certain tax considerations and, therefore, altered the definition of "owner" accordingly. See Kraemer; Folmar. Thus, there is a rational basis for the legislation. Accord Folmar. Nor does the statute discriminate against plaintiffs suffering the worst injuries by eliminating possible recovery from the lessor in view of the unlimited ability to recover from the lessee.
We therefore hold subsection 324.021(9)(b) constitutional and approve the district court's decision.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Abdala also contends that § 324.021(9)(b), Fla. Stat. (1987), cannot be applied to the facts of his case because he entered into the lease before the statute's effective date (Aug. 6, 1986), but the accident occurred after that date. Abdala argues that § 324.921(9)(b) only can be applied to lease contracts entered into after the statute's effective date. We reject this argument because Abdala's action is based on a tort, not contract, theory of damages. Thus, the controlling date is when Abdala's cause of action accrued, i.e., the date of the accident. See Berwald v. General Motors Acceptance Corp., 570 So.2d 1109 (Fla. 5th DCA 1990).
[2] "Access to courts.  The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Fla. Const.
[3] In Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917), this Court refused to find an automobile a dangerous instrumentality per se and held that the trial court improperly entered a directed verdict in favor of Southern Cotton Oil Co. On appeal after retrial this Court in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920), held that an automobile is a dangerous instrumentality per se and applied the dangerous instrumentality doctrine.
[4] Smith v. Department of Ins., 507 So.2d 1080 (Fla. 1987), has no application here because the statute in Smith did place a cap on damages.
[5] Art. I, § 2, and Art. I, § 9, Fla. Const.