613 So.2d 483 (1992)
Robert Thomas KRAEMER, Jr., Appellant,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION and Nationwide Insurance Company, Appellees.
No. 92-00315.
District Court of Appeal of Florida, Second District.
December 30, 1992.
Rehearing Denied February 18, 1993.
*484 Thomas P. Fox, Tampa; and David J. Abbey and Hillary H. Coleman of Fox & Grove, Chartered, St. Petersburg, for appellant.
Larry I. Gramovot and Matthew R. Danahy of Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, for appellee General Motors Acceptance Corp.
Stuart J. Freeman of Williams, Brasfield, Wertz, Fuller, Goldman, Freeman & Lovell, P.A., St. Petersburg, for appellee Nationwide Ins. Co.
PARKER, Judge.
Robert Thomas Kraemer, Jr. appeals a final summary judgment entered in favor of General Motors Acceptance Corporation (GMAC) and also appeals the denial of his motion for partial summary judgment in an action to determine insurance coverage.
This is the second occasion that this case has been to this court.[1] The supreme court quashed this court's first opinion, concluding that GMAC still could be held liable under the dangerous instrumentality doctrine even though the beneficial ownership to a vehicle owned by GMAC had been transferred to a long-term lessee.
This case requires this court to consider the application of section 324.021(9)(b), Florida Statutes (Supp. 1986). That section, which under certain circumstances relieves an automobile lessor from such responsibility as the owner of the automobile, provides:
Notwithstanding any other provision of the Florida Statutes or existing case law, the lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability; further, this subsection shall be applicable so long as the insurance required under such lease agreement remains in effect, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith.
§ 324.021(9)(b), Fla. Stat. (Supp. 1986). The term "financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection therewith" in section 324.021(9)(b) means "liability [as owner] under the dangerous instrumentality doctrine." Kraemer v. General Motors *485 Acceptance Corp., 572 So.2d 1363, 1366 (Fla. 1990).
In May 1986 Michael A. Green entered into a closed-end four-year lease agreement with GMAC for a 1987 Nissan automobile. The lease required Green to obtain liability insurance of $100,000/$300,000 bodily injury, $50,000 property damage (minimum of $300,000 combined single limit). Green signed an insurance information form, agreeing to honor GMAC's lease conditions for liability insurance of $100,000/$300,000, $50,000, or $300,000 combined single limit. An authorized agent for Nationwide countersigned this form stating, "I agree to endorse the above policy as directed by the lessee [Green] and certify coverage for the vehicle described ... as required under terms of the lease provisions." Nationwide's agent represented to GMAC that GMAC would be included as an additional named insured and loss payee under the policy and represented to GMAC that Nationwide had obtained coverage as required by GMAC. The form further required GMAC to receive notice by certified mail of any expiration, cancellation, or reduction of insurance applicable to this vehicle.
Three days later, Green obtained a policy from Nationwide with bodily injury liability of $25,000 each person/$50,000 each occurrence and property damage coverage of $25,000.[2] Green paid for the policy with a check which was later dishonored by his bank for nonsufficient funds. One month later Nationwide notified Green that it had been "necessary to void your policy as of the initiating effective date. This means that no coverage has been provided by this policy." Green did not obtain any other insurance coverage for the car.
On May 6, 1987, Calvin Gary borrowed the automobile from Green. The next day Gary committed an armed robbery while driving the automobile and was involved in a high-speed chase with law enforcement authorities when he collided with another vehicle, which resulted in the death of Marguerite Kraemer. At the time of the accident, Green was five months' delinquent in his payments on the lease. It is undisputed that GMAC received no notice of any insurance changes at the time this vehicle was involved in this accident.
GMAC sued for declaratory judgment, asserting that it was not liable for the death because GMAC did not have beneficial ownership of the car. Mr. Kraemer, as husband and personal representative of the decedent, counterclaimed seeking damages from GMAC for Gary's negligence on the basis of GMAC's liability as the owner and lessor. The trial judge entered summary judgment in favor of GMAC.
This court, in the first appeal, concluded that GMAC, as a lessor of a vehicle under a long-term lease giving the lessee the option to purchase, was not the beneficial owner of the vehicle and could not be held liable for injuries caused by the vehicle under the dangerous instrumentality doctrine. The supreme court quashed the opinion, holding that GMAC could not avoid liability for the driver's negligence under the dangerous instrumentality doctrine by transferring beneficial ownership of the vehicle to Green under a long-term lease.
Following the supreme court's opinion, this case was returned to the trial court, where Nationwide and its agent admitted that Nationwide had in full force and effect a policy of insurance which provided $100, 000/$300,000/$50,000 coverage on the day of the accident. Nationwide tendered $100,000 to Kraemer based upon the fact the policy was never canceled properly and the policy remained in full force and effect on the day of the accident. This event seems inconsistent with the following language of the supreme court in its Kraemer opinion: "It is significant that even if the statute [section 324.021(9)(b)] were applicable to this case, it would not help GMAC because the liability insurance on the automobile had lapsed when the accident occurred." Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363, 1367 (Fla. 1990). We are not inclined to disregard an *486 unequivocal statement of our supreme court even though GMAC argues that the statement is dicta. However, the issue presented from this court's opinion to the supreme court in this case apparently did not address whether this insurance policy was in effect at the time of the accident. Based upon Nationwide's position when this case was returned to the trial court that it had in place an existing policy and tendered its policy limits of $100,000, we conclude we must address whether GMAC acquired immunity from liability by Nationwide's admission of liability and tender of policy limits.
Even though this lease was made prior to the passage of section 324.021(9)(b), GMAC still receives the benefit of immunity from further liability if it has complied with the provisions of the statute on the day of the accident. See Abdala v. World Omni Leasing, Inc., 583 So.2d 330 (Fla. 1991). We conclude that Nationwide's admission that its policy was in effect on the day of the accident and the tender to Mrs. Kraemer's personal representative of $100,000 from Nationwide permits GMAC, as a long-term lessor, to claim immunity from liability pursuant to section 324.021(9)(b), Florida Statutes (Supp. 1986).
Judge Lehan in his dissent cites case authority for the proposition that Nationwide's admission is not binding upon the Kraemer family. We have no quarrel with that proposition. However, it does not alter our opinion that the full $100,000 coverage pursuant to the statute has been tendered to the Kraemer family and is available should the family choose to accept it.
The dissent would decide this case upon the wording of the lease which required insurance coverage of $100,000/$300,000/$50,000 or $300,000 single limit coverage. It presents a scenario that if the accident had substantial property damage also covered by the policy, the payment of property damage could reduce the available insurance proceeds available for personal injury or death under the policy. Our response to that scenario is that it did not happen in this case. The bottom line is that Nationwide has tendered its policy limits and that amount, $100,000, equals the amount required by the statute, under the facts of this case, to exempt GMAC from liability. Mrs. Kraemer's family can receive the full $100,000 to which it was entitled under the terms of the policy, and if there had been evidence of multiple bodily injury or death, the family could seek the full $300,000. If there were a case that fits the scenario presented by the dissent, we would consider the statute's application at that time to those specific facts. However, because GMAC developed these liability insurance requirements before the statute was enacted and Abdala permits GMAC to claim immunity from liability if the amounts of coverage comply with the statute, we conclude that GMAC, as to the facts of this case, has complied with the statute and is entitled to immunity from further liability.
We affirm the trial court, concluding that GMAC is immune from further liability by virtue of its compliance with section 324.021(9)(b).
HALL, J., concurs.
LEHAN, Chief Judge, dissents with opinion.
LEHAN, Chief Judge, dissenting.
I respectfully dissent. The next five paragraphs of this dissenting opinion summarize my reasons.
In my view the majority opinion, by disregarding the nonfulfillment of a plain statutory condition of section 324.021(9)(b), is not only in direct conflict with established Florida case law but also constitutes improper judicial legislation contrary to the vitally important constitutional separation of powers doctrine under which the judicial branch defers to the legislative branch. In addition, the majority opinion relies for the fulfillment of the other condition of section 324.021(9)(b) upon what is, as explained below, wholly insufficient evidence.
To relieve a long term automobile lessor of financial responsibility, i.e., from liability as owner under the dangerous instrumentality doctrine, section 324.021(9)(b) has two *487 basic conditions: first, that the lease require the lessee to obtain a certain minimum level of liability insurance coverage, and, second, that that level of coverage be in effect. In ruling by the entry of the summary judgment that the statute had been complied with, the trial court, while stating no basis for that ruling, implicitly found those two conditions to have been fulfilled.
In affirming the summary judgment, the majority opinion may also seem to have found those two statutory conditions to have been fulfilled. But in affirming, the majority opinion in actuality has the effect of judicially engrafting onto the statute an exception to the condition of section 324.021(9)(b) that the lease require the lessee to obtain a certain minimum level of liability insurance coverage. Under that exception which is effectively created by the majority opinion, that condition is disregarded when the other condition of section 324.021(9)(b)  that the level of insurance coverage required by the statute be in effect  has been fulfilled. The majority opinion also disregards a statement by the Florida Supreme Court in its prior opinion in this case indicating that the condition that the minimum level of insurance coverage be in effect was not fulfilled because the lessee's liability insurance had lapsed.
I would reverse the summary judgment because the lease did not require the minimum level of liability insurance coverage which the statute, as a condition to its operation, specifies is to be required by the lease. In explaining my reasoning, this dissenting opinion will preliminarily discuss the other statutory condition which requires the minimum level of insurance coverage to be in effect and the supreme court statement in that regard. Doing so is necessary to place in perspective appellees' argument concerning, and the context in which this dissenting opinion will then discuss, the lack of fulfillment of the statutory condition specifying what insurance coverage the lease must require, which is the basis upon which I would reverse.
The lack of fulfillment of that same statutory condition concerning what the lease must require was the basis on which the Fourth District Court of Appeal recently reversed a similar summary judgment in which section 324.021(9)(b) had been applied. Trevisol v. Ford Motor Credit Co., 583 So.2d 703 (Fla. 4th DCA 1991), review denied, 595 So.2d 556 (Fla. 1992). In fact, but for the majority opinion, this case could, and in my view should, have been disposed of by a reversing opinion as short as the two-paragraph reversing opinion of the Fourth District in Trevisol. Trevisol, which is further described and discussed below, simply followed the separation of powers doctrine in abiding by the conditions of section 324.021(9)(b).
Whether the Condition of Section 324.021(9)(b) That a Certain Minimum Level of Liability Insurance Coverage Be in Effect Was Fulfilled in Light of the Supreme Court's Statement Indicating That It Was Not.
As indicated above, the trial court implicitly ruled, and the majority has held, that the minimum level of liability insurance coverage specified in section 324.021(9)(b) as a condition to relieving a lessor of liability as owner of an automobile was in effect. However, as the majority opinion has recognized, the Florida Supreme Court in the prior appeal in this case stated otherwise: "It is significant that even if the statute [section 324.021(9)(b)] were applicable to this case, it would not help GMAC because the [Nationwide Insurance Company] liability insurance on the automobile had lapsed when the accident occurred." Kraemer, 572 So.2d at 1367.
The arguments before us as to whether that supreme court statement controls hinge upon whether the issue of the requisite liability insurance being or not being in effect was before the supreme court. These arguments involve the insurance information form referred to in the majority opinion which contained an alleged agreement between GMAC and Nationwide that the insurance coverage required by the lease was in effect which, it is argued by appellees, fulfilled the requirements of section 324.021(9)(b). Evidently no facts concerning the alleged agreement in the insurance *488 information form were brought to the attention of the supreme court in that prior appeal.
In effect appellees argue that the alleged agreement for the requisite insurance coverage should establish compliance with the statute notwithstanding the uncontroverted facts that the lessee paid the premium for a Nationwide policy which had been issued to the lessee with a check which was later dishonored by the bank for insufficient funds, as referred to in the above quoted supreme court statement, and that the specified insurance coverage under that policy was only $25,000 per person/$50,000 per accident and $25,000 property damage, i.e., less than the coverage required by section 324.091(9)(b), as recognized in the majority opinion. The position of appellees is that the only issue before the supreme court in Kraemer was whether GMAC should be considered the owner of the automobile for the purpose of the dangerous instrumentality doctrine, which the supreme court decided in the affirmative.
The corollary position of appellees is that the issue of whether the requisite coverage was in effect pursuant to section 324.021(9)(b) was not before the supreme court, was not argued in the supreme court (which is noted in footnote 5 of Kraemer, 572 So.2d at 1366), and was first directly in issue in the trial court upon remand from the supreme court. Therefore, according to appellees' corollary position, the above quoted supreme court statement indicating that the requisite coverage was not in effect was dicta. The question then arises as to whether, as appellees argue, that statement should properly be disregarded because, as dicta, it does not represent the law of the case. See 3 Fla.Jur.2d Appellate Review § 421 (1978); 13 Fla.Jur.2d Courts and Judges § 155 (1979).[3]
The majority alludes to this question, stating, "We are not inclined to disregard an unequivocal statement of our supreme court even though GMAC argues that the statement is dicta." The majority then effectively concludes that the statement is dicta and should be ignored. But even assuming that such an unequivocally worded statement of the supreme court can properly be ignored, this aspect of this appeal cannot properly be decided on the basis of the insufficient evidence presently in the record in this regard, as will now be explained.
Contrary to appellees' argument, the admissions of Nationwide, in response to GMAC's request for admissions, that $100, 000/$300,000/$50,000 coverage was in effect pursuant to that agreement are not binding upon appellant. See Kendrick v. Middlesex Development Corp., 586 So.2d 436, 437 (Fla. 1st DCA 1991) (admissions of one party in response to another party's request for admissions are not binding upon those who are not parties to the discovery). Those admissions provided the only basis relied upon in GMAC's motion for summary judgment for relieving GMAC of financial responsibility under section 324.021(9)(b). There is in the record no transcript of the summary judgment hearing. Factual recitations in the majority opinion concerning the alleged agreements represented by the insurance information form are apparently derived solely from those admissions.
Thus, based upon the existing record, in my view the majority opinion cannot properly make a determination that the requisite coverage was in effect. No such determination can be made without remanding for a trial court factual determination concerning the existence of the alleged agreement between GMAC and Nationwide and a legal determination of the effect of such an agreement in the context of this case. As indicated above, the foregoing admissions constituted, as far as can be ascertained *489 from the record, the only basis upon which the trial court relied in entering the summary judgment. Those admissions were not only not binding upon appellant, as shown by Kendrick, but also constituted in part a legal conclusion concerning the requisite coverage being in effect pursuant to the alleged agreement. It is unclear whether there may be other evidence in that regard.
Accordingly, the record shows no reliance by the trial court upon a proper evidentiary basis for finding the statutorily required minimum coverage to have been in effect. The majority opinion, which relies upon the above referenced admissions of Nationwide, apparently relies upon no more than did the trial court. That, as the majority opinion says, $100,000, or, for that matter, any amount, was tendered to appellant certainly does not establish that the statutorily required minimum coverage had been in effect so as to shield GMAC under the statute from allegedly much greater liability. In fact, appellant's argument is very much to the contrary. Appellant argues to the effect that the tender to appellant, as well as the alleged agreement between GMAC and Nationwide for $100,000 coverage, was incident to an improper arrangement between GMAC and Nationwide to invoke for GMAC the limitation of liability protection of section 324.021(9)(b) and thereby protect GMAC from much greater liability and, at the same time, protect Nationwide from a claim made against Nationwide by GMAC if the statutory protection was not obtained.[4]
But, as indicated in the opening paragraphs of this dissenting opinion, this aspect of the case, i.e., whether the statutorily required coverage was in effect, need not be decided because there is another  and much simpler  basis on which the summary judgment should be reversed. On this basis section 324.021(9)(b) does not apply to help GMAC even if as much as $300,000 Nationwide bodily injury coverage under the foregoing alleged agreement was in effect, as will now be explained.
The Condition of Section 324.021(9)(b) That the Lease Require a Certain Minimum Level of Liability Insurance Coverage Was Not Fulfilled.
As indicated above, the trial court implicitly ruled that the condition of section 324.021(9)(b) that the lease must require a certain minimum level of liability insurance coverage was fulfilled. This court's majority opinion also may seem to have held that under the facts of this case that statutory condition was fulfilled, purportedly because the amount of coverage contemplated by the statute had been tendered to Mrs. Kraemer.
However, it is clear that that statutory condition was not only unfulfilled but has been disregarded by the majority opinion, apparently as a newly established judicial exception to the requirements of sections 324.021(9)(b). As will be explained in the next paragraph of this dissenting opinion, the lease unquestionably did not require *490 the minimum level of liability insurance coverage which the statute requires that the lease require. Also, there can certainly be no validity to any apparent argument, if that is meant to be the argument, of the majority opinion that simply Nationwide's tender of $100,000 to Mrs. Kraemer established that the lease required the minimum level of liability insurance which the statute requires that the lease require. The majority opinion disregards that statutory condition, as apparently being irrelevant, after reaching its conclusion (unsupported by sufficient evidence, as explained through the citation and description of Kendrick above) that the requisite insurance coverage existed because of the alleged agreement represented by the insurance information form.[5]
As the majority opinion recognizes, the lease required $100,000 per person/$300,000 per accident/$50,000 property damage or $300,000 single limit coverage. As appellees argue, under the alternative of such a single limit policy there may be greater coverage than the $100,000/$300, 000/$50,000 coverage required by the statute, at least in the case of only a single bodily injury from an accident. However, by permitting that alternative $300,000 single limit coverage the lease also permitted less coverage than that required by the statute. For example, such single limit coverage would not provide as much assured, i.e., minimum, bodily injury coverage for an accident as would a $100,000/$300, 000/$50,000 policy if there were from the same accident substantial property damage also covered by the policy. See Smith v. State Farm Mutual Automobile Ins. Co., 479 So.2d 160, 161 n. 1 (Fla. 2d DCA 1985) ("The parties stipulated that, under a single-limit policy, there may effectively be no bodily injury coverage if a large property damage claim is paid first.").
Thus, it seems clear that since the lease did not require the minimum coverage which section 324.021(9)(b) specifies that the lease must require, that section does not relieve GMAC of liability as the owner of the automobile in this case. See Abdala, 583 So.2d at 332 (the statute applies "upon the satisfaction of specified preconditions... ."); Trevisol (a lease requiring less coverage than that required by section 324.021(9)(b) does not comply with the statute). See also Florida Steel Corp. v. Adaptable Developments, Inc., 503 So.2d 1232, 1234 (Fla. 1986) ("[A]ny statute in derogation of the common law requires strict compliance with its provisions by one seeking to avail himself of its benefits.").
The majority apparently has been persuaded by appellees' argument that under the lease in this case there was a choice of providing for the minimum coverage required by section 324.021(9)(b) and that that choice was exercised under the above-referenced alleged agreement between GMAC and Nationwide. The majority recognizes, as appellees argue, that since the statute was not enacted, nor was Abdala decided, until after the lease in this case had been entered into, GMAC could not be expected to have tracked in the lease the exact coverage requirements of the statute. However, as indicated above, section 324.021(9)(b) does not contain exceptions to its conditions. Section 324.021(9)(b) conditions its release of the lessor from liability upon "an agreement to lease ... which requires the lessee to obtain insurance ... which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability... ." (emphasis added), which the lease in this case did not require. Thus, the majority opinion disregards a validly enacted statutorily required condition, which a court is not entitled to do.
*491 As this court said concerning another plain statutory requirement which this court recognized had been persuasively argued to not apply,
[S]ection 255.05(2) is clear and unambiguous and requires the result ... [we reach]. However wise it would appear to be to adopt the ... [position] argued for by appellant, the legislature has not done so. It is not the function of the courts to engraft an exception onto a clear and unambiguous statutory provision. "It is neither the function nor prerogative of the courts to speculate on constructions more or less reasonable, when the language [of a statute] itself conveys an unequivocal meaning." Heredia v. Allstate Ins. Co., 358 So.2d 1353, 1355 (Fla. 1978), as quoted in City of St. Petersburg v. Clark, 492 So.2d 685 (Fla. 2d DCA 1986).
Moretrench American Corp. v. Taylor Woodrow Construction Corp., 565 So.2d 861, 862 (Fla. 2d DCA 1990) (emphasis added), approved sub nom., Taylor Woodrow Construction Corp. v. The Burke Co., 606 So.2d 1154 (Fla. 1992). And as the supreme court said in The Burke Co.,
Because section 255.05(2) is clear on its face, this court must construe the words chosen by the legislature in their plain and ordinary meaning.... [T]he remedy for any dissatisfaction with the result[] ... lies with the legislature and not with [the] [c]ourt[s].
606 So.2d at 1155-56. See also Horizon Hospital v. Williams, 610 So.2d 692 (Fla. 2d DCA 1992); Hillsborough County v. NCJ Investment Co., 605 So.2d 1287 (Fla. 2d DCA 1992); Blount v. State, 581 So.2d 604 (Fla. 2d DCA 1991); Dubrian v. Allstate Indemnity Co., 538 So.2d 151, 152 (Fla. 2d DCA 1989); Nationwide Property & Casualty Ins. Co. v. Marchesano, 482 So.2d 422, 426 n. 2 (Fla. 2d DCA 1985), approved, 506 So.2d 410 (Fla. 1987); Pfeiffer v. City of Tampa, 470 So.2d 10, 17 (Fla. 2d DCA), review denied, 478 So.2d 53 (Fla. 1985).
Thus, by disregarding the statutory condition that the lease must require a certain minimum level of bodily injury insurance coverage, i.e., by, as stated above, in effect excepting that condition from the statute when the other condition of the statute (that the requisite level of liability insurance coverage is in effect) has been fulfilled, the majority opinion is in conflict with Trevisol, The Burke Co., Moretrench, and the other cases cited above. The majority opinion thereby in my view constitutes improper judicial legislation, i.e., a judicial statutory amendment through effective deletion from section 324.021(9)(b) of a condition to that section which the legislature had properly enacted.
In that light, the fundamental basis of the rule of law upon which this dissent is grounded  the rule that the judicial branch must defer to the legislative branch (and particularly to the statutory conditions established by the legislative branch) acting in its proper sphere of operation (and vice versa)  bears emphasis. That fundamental basis is the critically important constitutional separation of powers doctrine. It is that doctrine "to which the success of this country's form of government is to a large extent attributable." White v. Board of County Commissioners, 524 So.2d 428, 431 (Fla. 2d DCA 1988) (Lehan, J., dissenting), quashed, 537 So.2d 1376 (Fla. 1989).
If the courts disregard the separation of powers doctrine in contexts of what may be considered by judges to be equitably justifiable circumstances of particular cases, as it appears the majority opinion does in this case, that doctrine would become virtually meaningless. This would be contrary to the well established tenet that
[t]he courts ... recognize the importance of the separation of powers doctrine [as] one of the bulwarks of our country's democratic system of government. The underlying concern is that if any one branch of our government  executive, legislative, or judicial  encroaches on the powers of another branch, the system of checks and balances built into our government ... suffer[s].

Id. at 437 (citing and quoting from Palm Harbor Special Fire Control District v. Kelly, 500 So.2d 1382, 1387 (Fla. 2d DCA *492 1987), aff'd, 516 So.2d 249 (Fla. 1987) (emphasis added)).
Furthermore,
[t]he separation of powers doctrine, as a principle which is fundamental to the well-being of our constitutional system as it was designed to function, is far more important than righting a possible wrong perceived by the majority in this case to result to a relatively small group, even if there were a wrong.
Hapney v. Central Garage, Inc., 579 So.2d 127, 139 (Fla. 2d DCA 1991) (Lehan, A.C.J., dissenting), cited with approval, Chandra v. Gadodia, 610 So.2d 15 (Fla. 5th DCA 1992). And, most importantly,
[c]ertainly the continued viability of the separation of powers doctrine depends to a very large extent  if not almost entirely  upon the judicial branch not only policing actions of the legislative and executive branches in that regard but observing and following the doctrine itself. While the courts not infrequently strike down legislation as encroaching upon judicial power, see, e.g., White, 537 So.2d 1376, "the cooperation and accommodation between the branches must be a two-way street." White, 524 So.2d at 437 (Lehan, J., dissenting).
579 So.2d at 140 (emphasis added).
The majority opinion misdescribes and misinterprets this dissenting opinion. In that regard the majority opinion takes the position that the "scenario" presented by this dissenting opinion is, in the words of the majority opinion, "that if the accident had substantial property damage covered by the policy, the payment of property damage could reduce the available insurance proceeds available for a personal injury or death under the policy." The majority opinion then says that "our response to that scenario is that it did not happen in this case." But in my view the majority opinion  it must be noted, made clear, and emphasized  thereby misses the point. Possible substantial property damage incident to an accident has been described by this dissenting opinion in words preceded by the words, "For example," i.e., not as the "scenario" but as an example (supported by cited case law) of a situation in which the single limit coverage permitted by the lease in this case would be clearly inadequate to provide for the statutorily required minimum bodily injury coverage. The point is not that, as the majority opinion says, such substantial property damage "did not happen in this case."
Similarly in Trevisol, where the lack of a requirement in the automobile lease for $50,000 property damage coverage was held by the Fourth District Court of Appeal to render section 324.121(9)(b) inapplicable, the Fourth District of course did not care that, or if, $50,000 property damage, in the words of the majority opinion in the case at hand, "did not happen." The point in Trevisol was, as is the point in the case at hand, that section 324.021(9)(b) did not apply because the lease simply did not require the minimum coverage which the statute requires that the lease require.
That, as the majority opinion in this case then goes on to say, "the bottom line is that Nationwide has tendered its policy limits and that amount, $100,000, equals the amount [of coverage] required by the statute" additionally misses the point of this dissenting opinion. Again, whether Nationwide, or anyone, tendered its "policy limits" (which tender, as indicated above, appellant argues was a part of an improper arrangement between GMAC and Nationwide) has nothing to do with the undisputed, and undisputable, determinative fact that the lease in this case did not contain the minimum coverage condition required by the statute to be contained in the lease in order to bring the statute into effect.
The result advocated by this dissent may seem harsh to GMAC in light of the supreme court's holding in Kraemer that GMAC is the owner of the automobile for the purpose of the dangerous instrumentality doctrine and GMAC's argument that it should be relieved of liability because the requisite statutory minimum level of coverage was in effect pursuant to its alleged agreement with Nationwide. But even if this court were entitled to, in effect, judicially legislate by permitting the lease in this case to be excepted from the statutory *493 condition concerning the requisites of the lease, as does the majority opinion, the result would not necessarily represent sound precedent. To do so would foster uncertainty in the law as well as litigation concerning the proper interpretations of any other such leases and coverage arrangements which do not strictly comply with the statute. This would be contrary to what has been acknowledged as "[a] basic function of the law ... to foster certainty in business relationships, not to create uncertainty by establishing ambivalent criteria for the construction of those relationships." Muller v. Stromberg Carlson Corp., 427 So.2d 266, 270 (Fla. 2d DCA 1983).
Recognizing that interpretations of other such leases which do not track the coverage requirements of section 324.021(9)(b) may be in issue in future cases, it is respectfully suggested that there be certified to the Florida Supreme Court as of great public importance the following question:
SHOULD SECTION 324.021(9)(b) BE CONSTRUED TO EXEMPT A LONGTERM LESSOR FROM LIABILITY WHEN THE LEASE IN ISSUE PERMITS THE LESSEE TO OBTAIN LESS INSURANCE COVERAGE THAN THAT WHICH THAT SECTION REQUIRES THE LESSEE TO OBTAIN WHEN THE LEASE ALSO PERMITS THE LESSEE TO OBTAIN THE COVERAGE REQUIRED BY THAT SECTION AND THAT REQUIRED COVERAGE HAS BEEN OBTAINED BY THE LESSOR?[6]
NOTES
[1] See Kraemer v. General Motors Acceptance Corp., 556 So.2d 431 (Fla. 2d DCA 1989).
[2] The record does not disclose the reason why the policy issued contained limits lower than those certified by Nationwide in the binder.
[3] The question may also arise as to whether the matter of the controlling effect of that supreme court statement should have been decided by the supreme court itself in response to a motion for rehearing or clarification pursuant to Florida Rule of Appellate Procedure 9.330, which was not filed. That might be considered doubtful because Abdala, which established the applicability of section 324.021(9)(b) to leases antedating that statute, was not decided until well after the time Kraemer was decided. In any event, this aspect need not be decided because this case should be reversed on other grounds.
[4] Along these lines, the following question might arise indicating possible support for appellant's foregoing argument, at least at this summary judgment stage: If, as the majority opinion recognizes, the alleged agreement between GMAC and Nationwide permitted either $100,000/$300,000/$50,000 coverage OR $300,000 single limit coverage, how could there be an "admission" by Nationwide of only $100,000 bodily injury coverage? That is, how could an insurer like Nationwide, who apparently is said to have agreed to provide one or the other of two optional types of coverages, one being more advantageous to the insurer than the other, "admit" (as though there is no question) that the more advantageous option was, as the majority opinion in this case says, its "policy limits?"

The foregoing question may seem especially curious when, as in this case, the party who apparently was the one who was to select the coverage option, the lessee, selected neither option. As the majority opinion recognizes, the lessee obtained (and did not pay for) a policy with coverages insufficient to fulfill the statutory requisites. Nationwide then, pursuant to its alleged agreement with GMAC, after the fact selected the option most advantageous to Nationwide. Under these circumstances, why could not Nationwide just as validly have "admitted" to $300,000 single limit coverage as its "policy limits"? Additional evidence clearly seems to be called for in this regard if this case is to turn upon this aspect, i.e., upon the condition of the statute that the requisite level of coverage be in effect, as it does since the summary judgment is affirmed by the majority opinion.
[5] Actually, the full condition is not simply that the lease require such minimum coverage; it is that the lease require the lessee to obtain such minimum coverage. But the basis for this dissent is that the lease did not require the minimum coverage. It is not that the lessee was not the one who obtained the coverage, which, as discussed above, is argued to have been obtained in the required minimum amounts by GMAC pursuant to its agreement with Nationwide. Therefore, to avert possible confusion about the basis for this dissent, this dissenting opinion uses that simplified description of that condition above and will use it below.
[6] This question in my view would effectively ask the supreme court to reaffirm the answer which has already been established in Florida, as indicated particularly in the foregoing citations to and quotations from Moretrench and The Burke Co. The suggestion of certifying the question is made solely in light of the holding of the majority opinion.