833 So.2d 832 (2002)
ENTERPRISE LEASING CO. SOUTH CENTRAL, INC., Appellant,
v.
William W. HUGHES, Jr., etc., Appellee.
No. 1D01-4821.
District Court of Appeal of Florida, First District.
December 12, 2002.
*833 B. Richard Young of Young, Bill & Fugett, P.A., Pensacola, for Appellant.
R. Waylon Thompson of Manuel & Thompson, P.A., Panama City; Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for Appellee.
LEWIS, J.
Enterprise Leasing Company South Central, Inc., appellant, challenges the trial court's finding that Chapter 99-225, Laws of Florida, violates the single subject rule under Article III, Section 6 of the Florida Constitution. Because each of the sections within Chapter 99-225 naturally and logically connect with the subject expressed in the title, we hold that Chapter 99-225 does not unconstitutionally violate the single subject rule. In addition, appellant contends that section 324.021, Florida Statutes (2000), which limits the liability of short-term motor vehicle lessors, does not deny access to courts, deny the right to a jury trial, violate the equal protection clause of the Florida Constitution, or violate the due process clause of the Florida Constitution. We agree. Accordingly, we reverse.

I. Factual Background

Appellant leased a motor vehicle to Earnest and Chris Jordan. Subsequently, on February 24, 2000, the vehicle driven by Chris Jordan crossed the center line and collided with the vehicle being driven by William W. Hughes, Sr. William W. *834 Hughes, Sr. died immediately upon impact. Martha Hughes, his passenger, died seventy-eight days later from complications due to the accident.
William W. Hughes, Jr., appellee, as personal representative of the estates of William W. Hughes, Sr. and Martha Hughes, filed a wrongful death action against appellant on June 30, 2000. Appellee alleged that appellant was liable for Jordan's negligence under the dangerous instrumentality doctrine. Subsequently, appellant filed a Motion to Limit Damages Pursuant to Section 324.021, Florida Statutes. It asserted that it was only liable to appellee for the statutory maximum of $220,000.
In appellee's response to appellant's Motion to Limit Damages Pursuant to Section 324.021, appellee argued that section 324.021 was unconstitutional. Appellee claimed that Chapter 99-225, which amended section 324.021, violated the single subject rule of the Florida Constitution. Appellee also claimed that section 324.021 denied access to courts, the right to a jury trial, as well as equal protection to the most seriously injured claimants and to the physically handicapped. In addition, appellee contended that the statute denied due process.
On July 3, 2001, appellant offered $134,000 in settlement of appellee's claims on behalf of William W. Hughes, Sr.'s estate. Appellee accepted the offer. Appellee proceeded to trial on claims raised on behalf of Martha Hughes' estate. A jury awarded appellee $176,594.36 for medical and funeral expenses as well as $180,000 in past and future pain and suffering to the survivors. Thereafter, the trial court denied appellant's Motion to Limit Damages Pursuant to Section 324.021. The trial court found that Chapter 99-225 violated the single subject rule under Article III, Section 6 of the Florida Constitution. This appeal follows.
As appellant raises constitutional questions, this Court reviews the trial court's order de novo. See, e.g., Ocala Breeders' Sales Co. v. Fla. Gaming Ctrs., Inc., 731 So.2d 21, 24 (Fla. 1st DCA 1999). When a trial court has declared a state law unconstitutional, the appellate court must begin the review process with the presumption that the law is constitutional. See id.; see also Dep't of Ins. v. Keys Title and Abstract Co., 741 So.2d 599, 600 (Fla. 1st DCA 1999). The party challenging the law has the burden of showing beyond a reasonable doubt that the law is unconstitutional. See Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1214-15 (Fla.2000).

II. Single Subject Rule

Appellant first argues that the trial court erred in finding Chapter 99-225 in violation of the single subject rule. We agree. Article III, Section 6 of the Florida Constitution provides, in pertinent part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." The purposes of the single subject rule are to prevent `log-rolling' legislation, or putting two unrelated matters in one act, and to prevent surprise of provisions in the act which were not indicated by the title and which might be overlooked and carelessly and unintentionally adopted. See State v. Canova, 94 So.2d 181, 184 (Fla.1957). An act may be as broad as the Legislature chooses provided that the matters involved in the act have a natural or logical connection. State v. Johnson, 616 So.2d 1 (Fla. 1993); Chenoweth v. Kemp, 396 So.2d 1122 (Fla.1981), receded from on other grounds by Sheffield v. Superior Ins. Co., 800 So.2d 197 (Fla.2001). The test for determining whether legislation meets the single subject *835 rule is "whether the provision is a necessary incident to the subject expressed in the title or tends to make effective or promote the object of the legislation." Tormey v. Moore, 824 So.2d 137, 141 (Fla.2002).
Contrary to appellee's representation at oral argument, the title of Chapter 99-225 is "An act relating to civil actions." See ch. 99-225, at 1400, Laws of Fla. Chapter 99-225 contains thirty-six sections, and each of these sections reflects either a substantive or procedural change in a civil action. The Legislature raised the burden of proof in certain circumstances, provided new defenses, established presumptions, limited recovery of damages, and required alternative dispute resolution in certain instances. The individual sections in Chapter 99-225 promote the unexpressed goal of the act, which is to control some of the perceived excesses of civil litigation. This is most readily apparent in sections 15 to 19, which expanded the immunity from liability for defendants. In addition, sections 20 and 23, which place limits on the recovery of damages, exhibit an intent to restrain any excesses of civil actions. Although the act does not contain any legislative findings or expressed intent, section 33 of Chapter 99-225 provides evidence of the Legislature's intent to control civil litigation. Section 33 requires the Office of Program Policy Analysis and Government Accountability to contract for an actuarial analysis to determine the:
expected reduction in liability judgments, settlements, and related costs resulting from the provisions of this act. The analysis shall be based on credible loss cost data derived from settlement or adjudication of liability claims accruing after the effective date of this act. The analysis shall include an estimate of the percentage decrease in such judgments, settlements, and costs by type of coverage affected by this act, including the time period when such savings or reductions are expected.
Ch. 99-225, § 33, at 1428, Laws of Fla. Although the title of the act is broad in its coverage, each section of the act is logically and naturally connected to the subject expressed in the title. The sections are necessary incidents to this subject and promote the object of the act.
The supreme court has rejected single subject challenges even when an act is lengthy, containing multiple sections and seemingly different topics. As long as all of the sections within the act can be unified under one umbrella of legislative intent, the Florida Supreme Court has upheld the constitutionality of the act. For instance, in State v. Lee, 356 So.2d 276, 278 (Fla.1978), the supreme court reviewed Chapter 77-468, Laws of Florida, which contained forty-four sections addressing both tort reform and insurance. The appellees in Lee argued that the act contained "at least two separate subjects, insurance and tort reform." Id. at 282. Only a few sections of the act specifically addressed tort litigation; the remaining sections related to increases in automobile insurance rates and related insurance problems. Id. The supreme court concluded that, although the act was "broad and comprehensive," the matters therein were naturally and logically connected. Id.
Similarly, in Smith v. Department of Insurance, 507 So.2d 1080, 1083 (Fla.1987), the supreme court reviewed the Tort Reform and Insurance Act of 1986, Chapter 86-160, Laws of Florida. The act contained seventy sections, which the court divided into five categories, each category containing sub-categories. Id. at 1085-86. The supreme court held that each section was integral to the Legislature's one goal of ensuring the "availability of affordable liability insurance." Id. at 1087. The *836 court rejected appellant's contention that the provisions therein dealing with contract actions violated the single subject rule, interpreting the act as applying to both tort and contract "claims for personal injury and property damage." Id.
In contrast, the supreme court has concluded that an act violates the single subject rule when an offending provision is glaringly different in nature from the remaining provisions of the act in such a manner that cannot be reconciled with the title or scope of the act. In State v. Thompson, 750 So.2d 643 (Fla.1999), the supreme court addressed the constitutionality of Chapter 95-182, Laws of Florida, which addressed both career criminal sentencing and domestic violence. The first six sections of the act amended the habitual offender statute by creating the sentencing category for violent career criminals, creating the offense of "possession of a firearm by a violent career criminal," and amending various other procedural provisions. Id. at 647. The other three sections created a civil cause of action for damages for violation of a domestic violence injunction, a cause of action for victims of repeated domestic violence, and imposed obligations on clerks of the court and law enforcement regarding domestic violence injunctions. Id. The supreme court concluded that the career criminal provisions and the civil domestic violence provisions addressed two different subjects with no overarching legislative statement of a crisis that might connect the two. Id. at 648.
In Heggs v. State, 759 So.2d 620, 624-25 (Fla.2000), the supreme court invalidated Chapter 95-184, Laws of Florida, because the very same civil domestic violence provisions in Thompson were incorporated into "an act relating to the justice system." Six sections related to sentencing guidelines; six sections amended various substantive criminal statutes; eleven sections amended various statutes addressing substantive crimes and sentencing enhancement; two sections amended gain-time and control release statutes; eight sections amended various statutes relating to monetary compensation for crime victims; the last three sections addressed domestic violence. Id. at 625. The supreme court again concluded that the civil domestic violence provisions were not logically connected to the criminal provisions and that no crisis existed to require combining the two. Id. at 626.
Chapter 99-225, in contrast to the acts addressed in Thompson and Heggs, addresses only civil litigation. The act does not contain any provisions unrelated to the subject of the act as expressed in the title. In addition, the individual provisions of the act promote the goal of the legislation by limiting the perceived excesses of civil litigation. Therefore, Chapter 99-225 does not violate the single subject rule. See Tormey, 824 So.2d at 141. Accordingly, we reverse the trial court's order declaring Chapter 99-225 unconstitutional.
Although the trial court did not specifically address the following constitutional challenges in its order finding Chapter 99-225 unconstitutional, we address these challenges and determine that the trial court could not have found section 324.021, as amended by Chapter 99-225, unconstitutional on the other grounds raised by appellee in the proceedings below.

III. Right of Access to Courts

Appellant contends that section 324.021 does not violate a plaintiff's right to access the courts. Article I, Section 21 of the Florida Constitution states: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." The leading case in a constitutional challenge to the right of access to courts is Kluger v. White, 281 So.2d 1 (Fla.1973). In Kluger, *837 the supreme court invalidated a statute requiring a minimum of $550 in property damages arising from an automobile accident before bringing an action. The supreme court held that:
where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
281 So.2d at 4. In Smith, the Florida Supreme Court also invalidated a portion of a tort reform statute that placed a maximum recovery amount on all non-economic damages because the statute did not provide claimants with a commensurate benefit. 507 So.2d at 1088. Therefore, the Legislature clearly cannot restrict damages by enacting either a minimum damage amount or a maximum damage amount without meeting the Kluger test. Id.
Appellant contends that no clear common law right or statutory right to sue a short-term lessor under the dangerous instrumentality doctrine exists and, therefore, Kluger does not apply. Alternatively, appellant argues that even if Kluger applies, section 324.021(9)(b)2, Florida Statutes (2000), passes the reasonable alternative remedy prong of the test. That is, the statute does not prevent the plaintiff from bringing a cause of action against the lessee.
The statutory right to a cause of action for negligence for injuries resulting from an automobile accident existed prior to the adoption of the 1968 Constitution of the State of Florida. See Kluger, 281 So.2d at 4. However, there was no statutory right to sue a long-term lessor of an automobile for injuries resulting from negligent operation of that automobile by lessees. See Abdala v. World Omni Leasing, Inc., 583 So.2d 330, 332 (Fla.1991). Similarly, prior to the adoption of the 1968 Florida Constitution, there existed no statutory right to hold short-term lessors of an automobile vicariously liable for injuries resulting from negligent operation of that automobile by a lessee.
The dangerous instrumentality doctrine is a part of Florida's common law. See Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996). The supreme court first extended the common law dangerous instrumentality doctrine to automobiles in 1920. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). Not until Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla.1990), had the dangerous instrumentality doctrine been applied to long-term lessors of automobiles. However, although not applied to lessors of automobiles until Kraemer, the dangerous instrumentality doctrine itself existed at common law. Therefore, the holding in Kluger applies to this case. Cf. Cauley v. City of Jacksonville, 403 So.2d 379, 385 (Fla.1981) (stating that as there was no statutory right to recover for a municipality's negligence predating the Declaration of Rights contained in the Florida Constitution or a common law cause of action as of July 4, 1776, Kluger was not applicable).
It does not follow, however, that section 324.021 restricts a party's access to court. Section 324.021(9)(b)2, Florida Statutes (2000), provides that:
The lessor, under an agreement to rent or lease a motor vehicle for a period of *838 less than 1 year, shall be deemed the owner of the motor vehicle for the purpose of determining liability for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. If the lessee or the operator of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the lessor shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the lessor for economic damages shall be reduced by amounts actually recovered from the lessee, from the operator, and from any insurance or self-insurance covering the lessee or operator. Nothing in this subparagraph shall be construed to affect the liability of the lessor for its own negligence.
This section merely limits the liability of short-term lessors. It does not preclude an individual suffering from injuries arising from a vehicle accident from suing the lessee or operator of the vehicle. The statute reduces responsibility for damages arising from the fault of others but preserves full liability for compensatory damages caused by one's own fault. The statute merely caps the amount of damages for the vicarious liability of the lessor. A plaintiff can always recover additional damages from the lessee or operator. Therefore, as the Legislature did not abolish an individual's right to sue lessors of automobiles for injuries arising out of an accident involving that automobile, section 324.021 does not violate the holding in Kluger. See Abdala, 583 So.2d at 333 (concluding that, in regards to long-term lessors, the "Legislature can determine the circumstances permitting vicarious liability without violating the holdings of Kluger"). Thus, we conclude that section 324.021 does not limit a plaintiff's right of access to the courts.
IV. Right to Trial by Jury
Appellant next argues that neither the language nor the operation of section 324.021 denies appellee the right to a trial by jury. Article I, Section 22 of the Florida Constitution provides that the "right of trial by jury shall be secure to all and remain inviolate." Section 324.021 does not violate this section of the Florida Constitution by limiting plaintiff's right to trial by jury. Under this statute, a jury still retains the ability to fully assess all damages against those at fault. Section 324.021 merely limits a plaintiff's available damages from the owner of the vehicle. A plaintiff retains the ability to recover fully from the lessee or operator of the vehicle. Cf. Smith, 507 So.2d at 1088-89 (stating that a statute which limits full recovery of economic damages prevents a plaintiff from receiving the constitutional benefit of a jury trial). Accordingly, we hold that section 324.021 does not limit a plaintiff's right to trial by jury.
V. Equal Protection/Due Process
Appellant finally argues that appellee failed to sustain his burden of showing that section 324.021 violates the equal protection and due process clauses of the Florida Constitution. It contends that the Legislature's amendments to section 324.021 are reasonably related to the amendment's objective to reform the civil justice system. The statutory caps apply across the board and do not invite arbitrary and discriminatory enforcement. Appellee contends that the statute discriminates against those suffering serious and catastrophic injuries by eliminating the lessor as a source of recovery.
In equal protection and due process challenges, the test is whether the *839 statute bears a reasonable relationship to a legitimate legislative objective and is not discriminatory, arbitrary, or oppressive. See Chicago Title Ins. Co., 770 So.2d at 1210; Abdala, 583 So.2d at 333. In Abdala, the supreme court addressed the constitutionality of section 324.021(9)(b), Florida Statutes (1987), as it applies to long-term leases. The supreme court flatly rejected any contention that section 324.021(9)(b) violated equal protection or due process. 583 So.2d at 334. The court stated that the statute does not "discriminate against plaintiffs suffering the worst injuries by eliminating possible recovery from the lessor in view of the unlimited ability to recover from the lessee." Id.
Similarly, section 324.021(9)(b), as it applies to short-term leases, does not discriminate against plaintiffs suffering the worst injuries. The damages cap applies to all plaintiffs. The statute does not contain any arbitrary or oppressive classifications. Furthermore, the present version of section 324.021 serves a legitimate purpose. The statute was intended to recompense others for injury to person or property caused by the operation of a motor vehicle. See § 324.011, Fla. Stat. (2000). Although the statute, as amended, reduces the vicarious liability of short-term lessors, a plaintiff can still be recompensed from the lessee or operator of the vehicle.
Appellee argues that section 324.021(9)(c) is not rationally related to any legislative purpose because it arbitrarily limits the liability of car and truck rental companies, but not the liability of any other business which rents or lends a vehicle. Section 324.021(9)(c)1. was added pursuant to Chapter 99-225. It provides that:
The limits on liability in subparagraphs (b)2. and 3. do not apply to an owner of motor vehicles that are used for commercial activity in the owner's ordinary course of business, other than a rental company that rents or leases motor vehicles. For purposes of this paragraph, the term "rental company" includes only an entity that is engaged in the business of renting or leasing motor vehicles to the general public and that rents or leases a majority of its motor vehicles to persons with no direct or indirect affiliation with the rental company. The term also includes a motor vehicle dealer that provides temporary replacement vehicles to its customers for up to ten days.
This section is rationally related to a legitimate legislative purpose. Through Chapter 99-225, the Legislature sought to shift some of the responsibility for damages due to the operation of the motor vehicle from the owner of a motor vehicle to the operator/lessee of the vehicle in short term leases. See H.R. Comm. on Judiciary, Analysis of HB 775. The statute shifts more of the liability to the actual tortfeasor.
The statute also does not arbitrarily limit the liability of car and truck rental companies while excluding other commercial businesses which lend vehicles. Section 324.021(9)(c)1. includes within the definition of "rental company" those businesses that provide temporary vehicles to its customers up to ten days. This is a reasonable period of time. Generally, customers would not need a replacement vehicle for a period longer than ten days. Thus, appellee has not shown beyond a reasonable doubt that section 324.021 violates the equal protection and due process clauses of the Florida Constitution and has not overcome the presumption that the statute is constitutional. We, therefore, hold that section 324.021 does not violate the equal protection and due process clauses of the Florida Constitution.

VI. Conclusion

Because Chapter 99-225 contains only one subject and each of its sections naturally and logically connect with the subject expressed in the title, we conclude that the *840 act does not violate the single subject rule. Furthermore, we hold that section 324.021, as amended by Chapter 99-225, is constitutional and does not violate the right of access to courts, the right to a jury trial, and the equal protection and due process clauses of the Florida Constitution. Accordingly, we reverse and remand for further proceedings.
REVERSED and REMANDED for further proceedings.
MINER, J., CONCURS; WOLF, J., CONCURS WITH WRITTEN OPINION.
WOLF, J., concurring.
I agree with the decision and reasoning supporting reversal as to the single subject issue. As the trial court did not reach the other issues, I would decline to address them.